Ellington, Presiding Judge.
This appeal arises from an action by Laura Lane Maia, following the death by suicide of her daughter, Sydney Sanders, against the mayor and city council of the City of Richmond Hill (collectively, the “City”) and Douglas Sahlberg, in his individual and official capacities, seeking compensatory and punitive damages for wrongful death, *556 intentional infliction of emotional distress, invasion of privacy, and for the deceased’s pain and suffering.[1] Following our grant of their application for interlocutory appeal, the appellants appeal from the trial court’s denial of their motion for summary judgment. For the reasons set forth below, we affirm in part and reverse in part.
A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant [or denial] of summary judgment, we construe the evidence most favorably towards the non-moving party, who is given the benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.
(Citations and punctuation omitted.) Johnson v. Omondi, 294 Ga. 74, 75-76 (751 SE2d 288) (2013).
Viewed in a light most favorable to Maia as the nonmoving party, the evidence shows that on February 14, 2011, Maia’s then 14-year-old daughter, Sydney Sanders, attempted suicide by cutting her neck and stabbing her chest and abdomen. Sahlberg and Dana Strickland, officers with the Richmond Hill Police Department (‘RHPD”), responded to the hospital to investigate. Strickland photographed Sanders’s injuries.[2]
Sanders remained hospitalized until February 23, 2011. While Sanders was in the hospital, news of her suicide attempt spread at her high school. According to Sanders’s boyfriend, H. H., “everybody knew after a couple days what happened.” On the day Sanders was released from the hospital, she met with friends and told them that they had one opportunity to ask her about the incident, but that she did not want to discuss it after that. Sanders disclosed to her friends that she had cut herself in her neck, abdomen, and chest.
On or about February 26, 2011, Sahlberg’s daughter, K. S., who attended school with Sanders, expressed concern to her father about why someone like Sanders would attempt to commit suicide. As the conversation progressed, he became concerned that his daughter did *557 not appreciate the serious nature of suicide. Sahlberg then logged into his password-protected work computer and showed K. S. the photographs that Strickland had taken of Sanders’s injuries. Sahlberg deposed that he did not print the photographs of Sanders’s injuries for his daughter, that he did not allow his daughter to copy, disseminate, or possess the photographs, and that he did not disseminate the photographs to anyone else.
One of Sanders’s classmates deposed that on either February 28 or March 1, 2011, K. S. showed her a photograph of the injury to Sanders’s breast and a photograph of the injury to Sanders’s abdomen, and that at least two other classmates were present when the photographs were shown. A second classmate of Sanders averred that K. S. “pulled out her phone and showed [her and another girl] a picture of [Sanders’s] cut on her [breast].” After her return to school the week of February 28, 2011, Sanders learned that K. S. had been showing photographs of her injuries. After Sanders found out that the photographs had been displayed at school, Maia saw that Sanders was “mortified” and “screaming and yelling and gasping for breath and crying[.]”
On April 1, 2011, Strickland learned that Sahlberg had shown the photographs of Sanders’s injuries to K. S., and that K. S. had told others about the photographs. Strickland informed Sahlberg that he had violated RHPD policy in disclosing the photographs. That policy, entitled “Duty to Refrain from Disclosing any Information Relating to Police Activities,” provided that “[d]iscussion of the operations and official business of the department . . . which is of a confidential nature without the permission of a supervisor is prohibited.” Sahlberg acknowledged his violation, and Strickland counseled him to “reflect on how disseminating confidential information can affect the victims and this department.” Sahlberg was disciplined for the infraction.
On the afternoon of April 5, 2011, RHPD officers responded to a report of a suspicious person at Sanders’s home. Police discovered that H. H. was in the house with Sanders, who had stayed home from school that day. Maia received word of the incident and returned home, where she declined the officers’ request to press charges against H. H. Maia then took Sanders to her high school to meet with H. H. and his mother, who was the assistant principal.
According to Maia, during the ride to the school, Sanders expressed, “[w]hat more can they do to me[?] Great. The police have been at the house and now what are they going to do and say[?]” Sanders also told Maia on that day that she was upset about how the police had talked *558 to her and belittled her, and Sanders said, “they’ve showed the pictures, now what are they going to do to me[?] What more can they do to me[?]”
At the meeting at Sanders’s school, Maia and H. H.’s mother decided that Sanders and H. H. should not see each other outside of school. Maia then took Sanders to see Sanders’s coach and mentor, Angie Hummeldorf. Sanders stated in front of the two adults that “she didn’t want to be here anymore,” and wished her suicide attempt had been successful, after which Maia stepped out of the room, and Hummeldorf and Sanders discussed why Sanders felt that way. Hummeldorf testified that, after she asked Sanders why she would want to take her life, Sanders “just kind of went on a rampage.” Sanders informed Hummeldorf of several frustrations, which included the photographs and that “those pictures are going around.” During the conversation, Sanders also said that her mother was disappointed in her, that girls were gossiping about her, and she mentioned her problems with her sister and H. H. After the discussion, Hummeldorf told Maia that Sanders “wasn’t doing so good” and should not be left alone.
Maia and Sanders then drove to Maia’s workplace, after which Maia dropped Sanders off at Sanders’s friends’ house at approximately 4:00 p.m. Another friend picked Sanders up between 6:00 p.m. and 7:00 p.m. The two talked for about 30 to 45 minutes, after which the friend dropped Sanders off at Sanders’s house. After her friend left, at 7:49 p.m. Sanders spoke with Maia, who was still at work, on the phone. Maia was not concerned that Sanders was then about to harm herself. When Maia returned home at approximately 8:45 p.m. she discovered that Sanders had committed suicide by hanging.
1. As a threshold issue with respect to the liability of the City and of Sahlberg, in his official capacity, we consider the appellants’ contention that the ante litem notice was deficient other than for the claim for wrongful death, and that the City and Sahlberg, in his official capacity, were consequently entitled to summary judgment on Maia’s claims for intentional infliction of emotional distress, invasion of privacy, and Sanders’s pre-death pain and suffering (also known as a survival claim).[3] As to Maia’s claim for intentional infliction of *559 emotional distress, the complaint alleged that the publication of the photographs was intentional or reckless, extreme and outrageous, and caused Maia, personally, severe emotional distress. Maia’s claims for invasion of privacy and Sanders’s pre-death pain and suffering alleged injuries to Sanders caused by the alleged breach of duty by Sahlberg in the distribution of the photographs.
Ante litem notice, as contemplated under OCGA § 36-33-5, is a prerequisite to filing suit against a municipality. The ante litem notice requirement also applies to claims against municipal employees in their official capacity. See Conley v. Dawson, 257 Ga. App. 665, 667 (1) (572 SE2d 34) (2002). OCGA § 36-33-5 (b) provides:
Within six months of the happening of the event upon which a claim against a municipal corporation is predicated, the person, firm, or corporation having the claim shall present the claim in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury. No action shall be entertained by the courts against the municipal corporation until the cause of action therein has first been presented to the governing authority for adjustment.
Substantial compliance with the statutory provisions is all that is required. See Owens v. City of Greenville, 290 Ga. 557, 561 (4) (722 SE2d 755) (2012).
The information supplied [in any given ante litem notice] will be deemed sufficient if it puts a municipality on notice of the general character of the complaint, and, in a general way, of the time, place, and extent of the injury. The act recognizes, by the use of the words “as nearly as practicable,” that absolute exactness need not be had.
(Citation and punctuation omitted.) Id. at 562 (4). And, “[t]o comply substantially, the notice must contain sufficient information so that the City can investigate the injuries alleged and determine if the claim should be settled without litigation.” (Citations omitted.) City of Moultrie v. Price, 310 Ga. App. 672, 673 (713 SE2d 880) (2011).
The notice at issue, which identified Maia as the surviving parent, provided that, “[p]ursuant to [OCGA] § 36-33-5” it was “the requisite pre-suit ante litem notice of the claim for damages pertaining to the death” of Sanders. The notice asserted that Strickland and Sahlberg photographed Sanders’s injuries on February 14, 2011, that *560 the photographs were subsequently distributed to Sanders’s classmates, including Sahlberg’s daughter, and that the City’s “negligence in allowing the distribution of these photographs and the willful, malicious, and reckless conduct” shown by the City and its officers “caused [Sanders] to hang herself on April 5, 2011.” The notice also alleged that “the City is legally obligated to answer, by way of monetary damages in the amount of at least $5,000,000.00, for the full value of [Sanders’s] life as well as the loss of love, society and companionship suffered by” Maia and Sanders’s sister.
The ante litem notice put the City on notice of a claim by Maia, as Sanders’s surviving parent, for wrongful death, and the appellants do not contest that the notice was sufficient to that extent. The notice, however, does not reference any claims on behalf of Sanders’s estate or identify Maia as the administratrix of Sanders’s estate, and does not present for adjustment claims by the estate for Sanders’s predeath pain and suffering or for invasion of Sanders’s privacy. See Jones v. City of Austell, 166 Ga. App. 808, 809 (305 SE2d 653) (1983) (notice of a personal injury claim by a tenant was not sufficient ante litem notice of a property damage claim by the landlord); Jones v. City Council of Augusta, 100 Ga.App. 268, 269 (6) (110 SE2d 691) (1959) (notice to the city of a claim by parents of minor child for negligence, which described the injury to the child and requested reimbursement for medical expenses, was not notice of a claim by the child for personal injury).
As for Maia’s individual claim for intentional infliction of emotional distress, “the statute requires the notice to state the ‘extent of the injury,’ which we have defined as ‘the nature, character, and particulars of the injury.’ ” (Punctuation and footnote omitted.) Davis v. City of Forsyth, 275 Ga.App. 747, 748 (1) (621 SE2d 495) (2005). The notice describes an injury to Sanders on account of the alleged distribution of photographs depicting Sanders, and does not state that Maia had suffered any personal injury on that account. Thus, “the City could not determine whether any such claim should be settled without litigation.” Id. See Rabun v. McCoy, 273 Ga.App. 311, 314-315 (1) (615 SE2d 131) (2005) (ante litem notice referring to claims arising out of defamatory statements said nothing regarding a claim for intentional infliction of emotional distress or a claim for invasion of privacy and failed to provide notice of such claims). The ante litem notice was not sufficient as to the claims for Sanders’s pre-death pain and suffering, invasion of her privacy, or for Maia’s individual claim for intentional infliction of emotional distress, and the trial court erred in failing to grant summary judgment to the City and to Sahlberg, in his official capacity, as to those claims.
*561 2. The appellants contend that the trial court erred in denying their motion for summary judgment on Maia’s wrongful death and survival claims because proximate cause cannot be established. In a related argument, the appellants contend that, in the absence of any evidence that Sahlberg’s conduct, an alleged breach of a ministerial duty, was the proximate cause of Sanders’s death, Sahlberg in his individual capacity is entitled to official immunity for these claims.[4]
“To recover damages in a tort action, a plaintiff must prove that the defendant’s negligence was both the cause in fact and the proximate cause of the injury.” (Punctuation omitted.) Atlanta Obstetrics & Gynecology Group v. Coleman, 260 Ga. 569 (398 SE2d 16) (1990).
Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred. What amounts to proximate cause is undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent.
(Citation and punctuation omitted.) Zwiren v. Thompson, 276 Ga. 498, 500 (578 SE2d 862) (2003). In other words,
[qjuestions of negligence and proximate cause are peculiarly questions for the jury except in clear, plain, palpable and undisputed cases. Only in the rare case where there is an admission of liability or an indisputable fact situation that clearly establishes liability, should summary judgment be granted.
(Citations and punctuation omitted.) Gulf Life Ins. Co. v. Folsom, 256 Ga. 400, 404 (349 SE2d 368) (1986).
*562 The appellants suggest that there was no causal link between Sahlberg’s conduct and Sanders’s suicide, pointing to evidence, inter alia, that a month elapsed after Sahlberg’s disclosure to his daughter of the photographs of Sanders’s injury, that there were other, more recent events, that likely triggered Sanders’s decision to kill herself, and that she was in a calm frame of mind when she committed suicide. We disagree. A trier of fact could conclude that Sahlberg breached his duty to Sanders by revealing her confidential information to his daughter in violation of RHPD policy. A jury could infer that this breach of duty was a cause in fact of Sanders’s suicide in light of evidence that, on the day of the suicide, Sanders remained severely distraught by the conduct of the RHPD in releasing her confidential information, as shown by her comments to Maia, and that Sanders referred to the dissemination of the photographs, among other things, when Hummeldorf asked her why she wanted to take her life.
The appellants maintain that Sahlberg’s breach of duty can nevertheless not be a proximate cause of Sanders’s injury, and, consequently, no recovery may be had, because her suicide was an unforeseen intervening cause of her death as a matter of law. We have held that, “where injuries resulting from the negligence of a third person produce a state of mind in the injured person which leads to [her] suicide, the person guilty of the negligence is not civilly responsible for the suicide.” (Citation and punctuation omitted.) Appling v. Jones, 115 Ga. App. 301, 303 (1) (154 SE2d 406) (1967) (physical precedent only). As we explained in Appling, an act of suicide “is a new and independent agency which does not come within and complete a line of causation from the wrongful act to the death and therefore does not render defendant liable for the suicide.” (Citation and punctuation omitted.) Id. Appling aligned Georgia with the general rule that “suicide is an unforeseeable intervening cause of death which absolves the tortfeasor of liability.” (Footnote omitted.) Dry Storage Corp. v. Piscopo, 249 Ga. App. 898, 900 (550 SE2d 419) (2001).
Notwithstanding this general rule, in assessing claims of negligence against medical professionals and institutions arising out of the suicide of a patient or former patient, we have not characterized the act of suicide as a per se intervening or superseding act that must preclude liability, if an intervening act at all. See, e.g., Purcell v. Breese, 250 Ga. App. 472, 474-475 (1) (552 SE2d 865) (2001); Brandvain v. Ridgeview Institute, 188 Ga. App. 106, 115-116 (3) (b) (372 SE2d 265) (1988). Rather, where the suicide “is a reasonably foreseeable consequence of the defendant’s negligent conduct, the legal, causal connection between that conduct and injury is not broken.” (Citation, punctuation and footnote omitted.) Brandvain v. Ridgeview Institute, 188 Ga. App. at 116 (3) (b). The reason for the incon *563 sistency with the general rule in these cases logically lies in the duty owed by the defendants to the deceased. “While there is no duty to guarantee that a patient will not commit suicide, Georgia has long recognized a duty with regard to treatment of patients by doctors and other individual health care professionals as well as private hospitals[.]” Id. at 112 (2).[5]
As Sahlberg was not a medical professional, nor was Sanders in his custody or care, we agree with the appellants that the cases in which the defendants stood in such a relationship to the deceased are distinguishable to that extent. Nevertheless, Sahlberg did owe a specific duty not to disclose Sanders’s confidential information. His duty to protect the public, and particularly Sanders, can be contrasted to the breach of duty in Appling, which concerned the defendant’s negligence in colliding with an automobile driven by the plaintiff’s son. See Appling v. Jones, 115 Ga. App. at 301. As we noted in Appling, the “subsequent intervening act of suicide was certainly not such a usual or foreseeable consequence or normal incident of such a collision as to make the defendants’ negligence actionable.” Id. at 307 (2). Here, however, Sahlberg had reason to know that Sanders was peculiarly vulnerable because he had investigated her suicide attempt. And as Sahlberg owed a special duty to protect the public and Sanders, in particular, we find this case to be more akin to Brandvain than to Appling. Accordingly, we find that, if Sanders’s suicide was a reasonably foreseeable consequence of Sahlberg’s negligent conduct, her act of suicide was not an intervening act that would preclude Sahlberg’s breach of duty from constituting the proximate cause of that injury. See Brandvain v. Ridgeview Institute, 188 Ga. App. at 116 (3) (b); Knight v. Wal-Mart Stores, 889 FSupp. 1532, 1542 (III) (C) (3) (S.D. Ga. 1995) (noting that cases that rely on a pure foreseeability approach in assessing whether a suicide was a proximate cause of the defendant’s negligence “find that suicide does not relieve a defendant of liability for wrongful death when the defendant had reason to know of the risk of suicide. These cases usually involve defendants having ... a special duty to the public”). Given the sensitive nature of the photographs and Sahlberg’s knowledge that Sanders had previously tried to take her own life, it is not *564 plain and palpable that Sanders’s suicide was not a foreseeable consequence of Sahlberg’s breach of duty, and the trial court properly reserved the issue for the jury.
The City further argues that as there is no evidence that Sahlberg gave copies of the photographs to his daughter, but only allowed her to view them, K. S.’s “theft” of the photographs was an intervening act not foreseeable or triggered by Sahlberg’s disclosure. As a rule,
there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant’s act, and which was sufficient of itself to cause the injury.
(Citation and punctuation omitted; emphasis supplied.) La Quinta Inns v. Leech, 289 Ga. App. 812, 816 (1) (658 SE2d 637) (2008). In other words, the intervening wrongful act does not insulate the defendant from liability “if the defendant had reasonable grounds for apprehending that such wrongful act would be committed.” (Citation and punctuation omitted.) Ontario Sewing Machine Co. v. Smith, 275 Ga. 683, 686-687 (2) (572 SE2d 533) (2002). Here, it is not plain and palpable that Sahlberg had no reasonable grounds to apprehend that his disclosure of the photographs of a classmate to his teenaged daughter might motivate her to then obtain and distribute them. The trial court did not err in allowing the issue of proximate cause to be considered by a jury and in denying the appellants’ motion for summary judgment on Maia’s wrongful death and survival claims.[6]
3. As to Sahlberg in his individual capacity, the appellants contend, inter alia, that the trial court erred in denying their motion for summary judgment as to Maia’s claim for intentional infliction of emotional distress because there is no evidence that Sahlberg’s allegedly tortious conduct was directed toward Maia.[7]
In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury. On the other hand, where the conduct is malicious, wilful or wanton, recovery can be had without the necessity of an impact— *565 [E]ven malicious, wilful or wanton conduct will not warrant a recovery for the infliction of emotional distress [, however,] if the conduct was not directed toward the plaintiff.
(Citations omitted.) Ryckeley v. Callaway, 261 Ga. 828, 828-829 (412 SE2d 826) (1992).[8] As the appellants contend, there is no evidence that Sahlberg’s conduct, that is showing his daughter photographs of Sanders’s injuries, was directed toward Maia.
Instead of pointing to evidence that Sahlberg’s conduct was directed toward her, Maia contends that the appellants are not entitled to summary judgment on her claim for intentional infliction of emotional distress because there is evidence that she suffered a nonphysical injury to her person and incurred pecuniary losses, citing Oliver v. McDade, 328 Ga. App. 368, 370 (2) (762 SE2d 96) (2014), affirmed in part and vacated in part, Oliver v. McDade, 297 Ga. 66 (772 SE2d 701) (2015). In Oliver v. McDade, we referenced the rule that “a plaintiff may recover damages for emotional distress flowing from a defendant’s negligence, notwithstanding the absence of physical injury” if, but only if, “the plaintiff has suffered a pecuniary loss and has suffered an injury to the person, albeit not physical.” (Punctuation and footnote omitted; emphasis supplied.) 328 Ga. App. at 370 (2), vacated on other grounds, Oliver v. McDade, 297 Ga. at 68.[9] Because Maia does not base her claims on any allegations of negligence, Georgia’s impact rule does not apply. Ryckeley v. Callaway, 261 Ga. at 829-830; Hamilton v. Powell, Goldstein, Frazer & Murphy, 252 Ga. 149, 150 (311 SE2d 818) (1984); Sanders v. Brown, 178 Ga. App. 447, 450 (1) (343 SE2d 722) (1986). And, because the impact rule does not apply, it follows that Maia’s reliance on the pecuniary loss exception to the impact rule is misplaced.
Because there is no evidence that the allegedly tortious conduct was directed toward Maia, the trial court erred in denying the *566 appellants’ motion for summary judgment to the extent her complaint asserts a claim for intentional infliction of emotional distress.[10] Pretermitting whether Maia’s complaint can reasonably be construed as asserting a claim for negligent infliction of emotional distress, such that the impact rule and the pecuniary loss exception may be applicable, the record shows that the appellants did not address any such claim in their motion for summary judgment, and Maia did not address the issue in opposing the motion. Because any claim for negligent infliction of emotional distress was not presented to the trial court, any consideration on appeal of whether there is evidence to support the claim would be premature. Oliver v. McDade, 297 Ga. at 68.
4. As to Sahlberg in his individual capacity, the appellants further contend that the trial court erred by denying their motion for summary judgment on Maia’s claim, for invasion of privacy.[11] In the complaint, Maia alleges that the confidential photographs of Sanders’s person should have remained private and not published or made public to Sahlberg’s daughter; that such disclosure was offensive or objectionable to a reasonable person; and that the disclosure harmed Sanders. The elements of a claim for the public disclosure of private facts[12] are:
(a) the disclosure of private facts must be a public disclosure;
(h) the facts disclosed to the public must be private, secluded *567 or secret facts and not public ones; and (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances.
(Citation and punctuation omitted.) Walker v. Walker, 293 Ga. App. 872, 875 (2) (c) (ii) (668 SE2d 330) (2008). See also Cox Broadcasting Corp. v. Cohn, 420 U. S. 469, 489 (III) (95 SCt 1029, 43 LE2d 328) (1975) (describing the tort of public disclosure under Georgia law as that “in which the plaintiff claims the right to be free from unwanted publicity about his private affairs, which, although wholly true, would be offensive to a person of ordinary sensibilities”).
The appellants maintain, among other things, that there is a lack of evidence sufficient to show a public disclosure in that Sahlberg only showed the photographs to his daughter. Maia responds that there is no “mandatory authority” that publication to a single individual cannot meet the public disclosure requirement, and that public disclosure remains an issue of fact that should be resolved by a jury.
Neither party has cited, and we are unaware of, any controlling Georgia authority as to what constitutes a “public disclosure” of a private fact. However, as explained in the comments to the Restatement of Torts 2d, “to communicate a fact concerning the plaintiff’s private life to a single person or even to a small group of persons” is not sufficient to constitute a public disclosure. Restatement of Torts 2d, § 652D (comment a).[13] “On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient” to constitute a public disclosure. Id. Whether oral, written, or by other means, the publicity given to the private life of the individual must be “a communication that reaches, or is sure to reach, the public.” Id. Here, even if Sahlberg’s disclosure was otherwise wrongful, it was a private communication to his daughter and not to the public, nor was the disclosure of the photographs “sure to reach” the public. See Price v. Scranton Sch. Dist., Civil Action No. 11-0095 (2012 U. S. Dist. LEXIS 1651, *47) (M.D. Pa. January 6, 2012) (dismissing invasion of privacy claim based on disclosure of a minor’s vaginal infection to students at her school and a neighboring school *568 as “the publication was not so widespread that it was communicated to the public at large, or to so many people that it was ‘substantially certain’ to become public knowledge”). The trial court erred in denying the appellants’ motion for summary judgment as to this claim.
5. Lastly, the appellants contend that the trial court erred in failing to grant summary judgment to the City and Sahlberg, in his official capacity, as to Maia’s claims for punitive damages. We agree, and Maia concedes that the trial court erred in this respect. See City of Columbus v. Myszka, 246 Ga. 571, 573 (4) (272 SE2d 302) (1980) (holding that absent explicit statutory authority a municipality cannot be held liable for punitive damages).

Judgment affirmed in part and reversed in part.

Phipps, P. J., concurs. Barnes, P. J., and McMillian, J., concur fully in part and concur in judgment only. Dillard, Ray, and Peterson, JJ., concur in part and dissent in part.

 Maia pursued her claims individually, as Sanders’s parent and natural guardian, and as administratrix of Sanders’s estate.

 Strickland denied photographing Sanders’s chest injuries.

 Under Georgia law, Maia was entitled, as the representative of Sanders’s estate, to seek damages for Sanders’s pre-death pain and suffering as a survival claim. See Carroll Fulmer Logistics Corp. v. Hines, 309 Ga. App. 695, 696-697 (710 SE2d 888) (2011). Maia was also authorized to seek damages on behalf of Sanders’s estate for invasion of privacy, which was a claim for a tort committed against Sanders before her death. See OCGA § 9-2-41 (“No... action or cause of action for the recovery of damages for... injury to the person... [shall] abate by the death of either party.”).

 Public agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure: The doctrine of official immunity, also known as qualified immunity, protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.
(Punctuation and footnote omitted.) City of Atlanta v. Shavers, 326 Ga. App. 95, 97-98 (2) (b) (756 SE2d 204) (2014). See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d) (claims against state officers and employees); Common Cause/Ga. v. City of Atlanta, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005) (As amended in 1991, the Georgia Constitution allows suit against a municipal officer in his or her personal capacity if such officer negligently performed, or failed to perform, a ministerial duty, or acted with actual malice or with actual intent to cause injury.).

 As to physicians, “the duty is that inherent in the doctor-patient relationship, which, if breached by failure to exercise the requisite degree of skill and care, with that failure being the proximate cause of the injury, will result in liability.” (Citations omitted.) Brandvain v. Ridgeview Institute, 188 Ga. App. at 112 (2). A private hospital “is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient’s condition, which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient, may require.” (Citation and punctuation omitted.) Id.

 In light of the inadequacy of the ante litem notice of Maia’s survival claim, as we held in Division 1, supra, only Sahlberg in his individual capacity can be held liable on the survival claim.

 The City and Sahlberg, in his official capacity, were entitled to summary judgment on this claim for the reasons set forth in Division 1, supra.

 See also Hamilton v. Powell, Goldstein, Frazer & Murphy, 252 Ga. 149, 150 (311 SE2d 818) (1984) (“As a general precept, damages for mental distress are not recoverable in the absence of physical injury where the claim is premised upon ordinary negligence. However, when the claim is for intentional misconduct, damages for mental distress may be recovered without proof of physical injury”) (citations omitted); Montega Corp. v. Hazelrigs, 229 Ga. 126, 127 (189 SE2d 421) (1972) (“In cases where mere negligence is relied on, before damages for mental pain and suffering are allowable, there must also be an actual physical injury to the person, or a pecuniary loss resulting from an injury to the person which is not physical; such an injury to a person’s reputation, or the mental pain and suffering must cause a physical injury to the person. In cases where mere negligence is not relied on, but the conduct complained of is malicious, wilful, or wanton, mental pain and suffering may be recovered without the attendant circumstances mentioned above.”) (citation and punctuation omitted).

 See also Coon v. The Medical Center, 335 Ga. App. 278, 283 (2) (780 SE2d 118) (2015); Nationwide Mat. Fire Ins. Co. v. Lam, 248 Ga. App. 134, 138 (2) (546 SE2d 283) (2001).

 Smith v. Stewart, 291 Ga. App. 86, 101 (5) (b) (660 SE2d 822) (2008) (where the plaintiff asserted a claim for intentional infliction of emotional distress, based on a character in a novel that allegedly portrayed her as alcoholic and promiscuous, the author was entitled to summary judgment because there was no evidence that the author’s actions in writing and publishing the novel were directed toward the plaintiff); Hill v. City of Fort Valley, 251 Ga. App. 615, 617 (1) (a) (554 SE2d 783) (2001) (where the plaintiffs asserted a claim of intentional infliction of emotional distress, based on the defendant’s removing their mother’s casket from one plot and reburying it in the correct plot, the defendant was entitled to summary judgment because there was no evidence that its actions in moving the casket were directed toward the plaintiffs); Sanders v. Brown, 178 Ga. App. at 448-451 (1) (a claim for intentional infliction of emotional distress, based on the defendant spraying a child with insecticide while she stood in a garden, could be maintained only by the child, and not by any other member of her family, because the conduct was directed only toward her).

 The City and Sahlberg, in his official capacity, were entitled to summary judgment on this claim for the reasons set forth in Division 1, supra.

 “Invasion of privacy’ encompasses four torts under a common name and include “(1) intrusion upon the plaintiff’s seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant’s advantage, of the plaintiff’s name or likeness.” (Citation and punctuation omitted.) Martin Luther King, Jr. Center for Social Change v. American Heritage Products, 250 Ga. 135, 142 (1) (296 SE2d 697) (1982). Maia does not contest the appellants’ characterization of her claim for invasion of privacy as the tort of public disclosure of private facts.

 Georgia courts have cited to the Restatement of Torts as persuasive authority in the context of claims for invasion of privacy. See, e.g., Yarbray v. Southern Bell Tel. & Telegraph Co., 261 Ga. 703, 705, n. 2 (409 SE2d 835) (1991); Smith v. Stewart, 291 Ga. App. at 100 (5) (a) (i).