**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P.J. and SELF, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 22, 2017**

# In the Court of Appeals of Georgia

A17A0891. REYNOLDS v. CB&T.                    SE-034

SELF, Judge.

Willie T. Reynolds sued CB&T, a division of Synovus Bank ("CB&T"), for wrongful foreclosure, breach of contract, intentional and grossly negligent infliction of emotional distress, unjust enrichment, and promissory estoppel. CB&T moved for summary judgment on all claims, and the trial court granted its motion. As there are genuine issues of material fact supporting all claims, we reverse the trial court's grant of summary judgment to CB&T.

Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "We review a trial court's grant of summary judgment de novo and construe all inferences in the light most

favorable to the nonmoving party." *Olde Towne Tyrone, LLC v. Multibank 2009-1 CRE Venture*, 326 Ga. App. 322, 323 (756 SE2d 558) (2014).

Viewed in the light most favorable to Reynolds, the record shows that Reynolds borrowed $253,371 from CB&T in order to construct his family's home. Reynolds executed a promissory note for the full amount, which was secured with a deed to secure debt pledging the property on which the home was being built as security for the loan. The promissory note was executed on June 18, 2012, and had a maturity date of June 18, 2013. Its stated purpose was for "construction." The note was renewed for a nearly identical amount on July 1, 2013, and December 9, 2013. On February 13, 2015, the amount of the loan renewed was $219,625.93, with a maturity date of May 13, 2015. The note provided that "[a]ny changes to this note or any agreement securing this note must be in writing and signed by you and me."

On July 7, 2015, Travis Hargrove, CB&T's attorney, sent a demand letter to Reynolds via certified mail, demanding payment of $222,172.27, the balance owed on the note. On September 2, 2015, Hargrove sent Reynolds a certified mail notice that CB&T intended to foreclosure on the property and that a foreclosure sale would be held on October 6, 2015. Hargrove also included a copy of the foreclosure notice in that correspondence. Reynolds never claimed the letter. The notice of foreclosure

2

ran in the local newspaper from September 9, 2015 to September 30, 2015, and a non-judicial foreclosure was conducted on October 6, 2015. CB&T was the highest bidder at the foreclosure sale, purchasing the home for $225,334.24.

Reynolds sued CB&T a month later, alleging that the bank had expressly agreed to extend or modify the note's maturity date until Reynolds could complete construction of the home and obtain a certificate of occupancy. At that point, Reynolds intended to obtain a permanent mortgage or seek to convert the note into a residential mortgage loan. In his verified interrogatory responses, Reynolds stated that from July 25, 2015, through September 30, 2015, CB&T advised Reynolds to keep building and that he should go ahead and finish the home. Reynolds was led to believe by CB&T and Hargrove that completing the house and acquiring a permanent mortgage was in the best interest of both parties. Reynolds further explained that CB&T employee, Scott Jackson, was attempting to modify the loan date when another division of the bank began foreclosure proceedings. He further stated that on July 27, 2015, attorney Hargrove stated that he "could finish the construction as it was going well and [a] CB&T Property Inspector came out several times to the property and agreed." Reynolds applied for a permanent mortgage in July and August 2015, but was denied because the default appeared on his credit report. Reynolds built

the home himself and averred in his interrogatory responses that he spent over $70,000 of his own money and personal labor on the project in reliance on CB&T's promise that he could complete construction of the home after his initial default. According to Reynolds, a professional appraiser "dispatched" by CB&T gave the house a value of "approximately $400,000" which was $175,000 more than the amount owed on the loan.

The trial court granted CB&T's motion for summary judgment on all claims, ruling that (1) the foreclosure complied with the relevant statutes; (2) parol evidence cannot be admitted to alter or vary the terms of the promissory note; (3) Reynolds defaulted on the loan and, therefore, cannot recover for intentional infliction of emotional distress; (4) the existence of a written contract precludes a claim for unjust enrichment; and (5) Reynolds' claim for promissory estoppel fails because the alleged promise is vague and indefinite as to material terms such as the interest rate and maturity date. On appeal, Reynolds challenges these rulings.

1. In two related enumerations of error, Reynolds contends that the trial court erred in granting summary judgment on his claims for wrongful foreclosure and breach of contract because CB&T's oral agreement to modify the due date of the loan to the date Reynolds completed the home and obtained a certificate of occupancy

4

raises a genuine issue of material fact as to whether there was a mutual departure from the promissory note so as to constitute a quasi-new agreement between the parties. Reynolds claims he provided value in exchange for the extended loan date, including expending his own labor and money to complete the construction, thus increasing the property's value by at least $170,000.

Any modification of a promissory note must be in writing because it falls within the Statute of Frauds. The Statute of Frauds is codified at OCGA § 13-5-30, and provides that in order to be enforceable, various types of agreements must be "in writing and signed by the party to be charged therewith or some person lawfully authorized by him." Pursuant to OCGA § 13-5-30 (7), the promissory note had to be and was executed in writing. "As the [promissory note] had to be in writing under the [S]tatute of [F]rauds, so likewise, under the general rule, any proposed modification thereof, to be effective, must also have been in writing." (Citation and punctuation omitted.) *Brooks v. Gwinnett Community Bank*, 311 Ga. App. 806, 807 (717 SE2d 647) (2011). See also *Jaraysi v. Sebastian*, 318 Ga. App. 469, 475 (1) (c) (733 SE2d 785) (2012) ("'a contract which is required by the Statute of Frauds to be in writing can not be modified by a subsequent agreement in parol'"), overruled on other grounds by *George v. Hercules Real Estate Svcs*., 339 Ga. App. 843 (795 SE2d 81)

5

(2016); *S & A Indus. v. Bank Atlanta*, 247 Ga. App. 377 (543 SE2d 743) (2000) (borrower's reliance on conversations "'to add to, take from or vary'" terms of promissory note, which met requirements of Statute of Frauds, barred by parol evidence rule).

However, oral modification of a written contract subject to the Statute of Frauds, such as the promissory note here, may be effective "where a modification of the written contract has been agreed to by all parties, performed by one and accepted by the other. . . ." (Citations, punctuation and footnote omitted.) *Jaraysi*, 318 Ga. App. at 469, 475 (1) (c). "This result under the [S]tatute of [F]rauds comports with the general rule that a mutual departure from the terms of an agreement results in a quasi[-]new agreement suspending the original terms of the agreement until one party has given the other reasonable notice of its intent to rely on the original terms." (Citation and punctuation omitted.) *Dobson v. Matt Owens Logging, Inc.*, 326 Ga. App. 879, 882 (755 SE2d 374) (2014). See also *Eaves v. J.C. Bradford & Co.*, 173 Ga. App. 470, 471-472 (326 SE2d 830) (1987) (physical precedent only) (while mere breach by one party will not demonstrate the creation of a quasi-new agreement, the consent to enter a new agreement may be shown by the parties' course of conduct and

is generally a question for a jury to determine). Mutual departure is codified at OCGA § 13-4-4 and provides:

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

See *Wright Carriage Co. v. Business Dev. Corp. of Georgia*, 221 Ga. App. 49, 52, n.1 (471 SE2d 218) (1996) ("Mutual departure affects only the particular terms at issue; other executory terms in the agreement remain in force."). See also *Shalom Farms, Inc. v. Columbus Bank & Trust Co.*, 169 Ga. App. 145, 146-47 (1) (312 SE2d 138) (1983) ("[w]hile mutual departure from the terms of a contract, as in a quasi new agreement, mandates notice of the intention of one of the parties to return to the original terms before those terms can be enforced . . . it is only the particular terms encompassed in the quasi new agreement that are affected thereby, and the other terms of the original contract remain enforceable as written"). Further, although mutual departure ordinarily requires the receipt or payment of money, slight consideration may support a departure from the contractual terms. See *AAF-McQuay,*

7

*Inc. v. Willis*, 308 Ga. App. 203, 220 (4) (c) (707 SE2d 508) (2011). "The question whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury." (Punctuation and footnote omitted.) *Vakilzadeh Enterprises v. Housing Auth. of DeKalb*, 281 Ga. App. 203, 206 (635 SE2d 825) (2006). Moreover, "a provision in a contract against waiver of contractual rights may itself be found by the jury to have been waived." (Punctuation and footnote omitted.) Id.

Reynolds claims that the parties by their course of conduct mutually departed from the terms of the original note as to the due date and that, therefore, CB&T could not declare him in default. According to Reynolds, CB&T agreed to modify or extend the due date of the loan to the date Reynolds completed the home and obtained a certificate of occupancy and the record supports this contention. Reynolds' interrogatory responses reflect that he expended personal funds and labor completing the home after CB&T and Hargrove reassured him the bank would either modify or extend the note's maturity date until he could complete construction and obtain a certificate of occupancy. There is some evidence that CB&T agreed with Reynolds to modify the due date of the original promissory note to the date of completion of the house and that CB&T accepted as consideration for that modification Reynolds' labor

8

and personal expenditure. CB&T not only attempted to work with Reynolds to modify the due date, but sent out a property inspector to check on the progress of construction. See *Wright Carriage*, supra, 221 Ga. App. at 53 (1) (before provisions of OCGA § 13-4-4 apply, evidence must establish a pattern or course of conduct evidencing an agreement or waiver of the provisions in the original contract). Accord *L.D.F. Family Farm v. Charterbank*, 326 Ga. App. 361, 365-66 (2) (756 SE2d 593) (2014).[1]

Reynolds' personal and financial investment in the home ensured that CB&T could ultimately foreclose on a newly-constructed home instead of an incomplete construction project. Additionally, CB&T's investment in the property mounted because the property value went up as Reynolds purchased materials and expended labor completing the home. The facts show that CB&T benefitted from encouraging Reynolds to complete construction. Based on the record before us, a genuine issue of material fact exists as to whether the parties formed a quasi-new agreement and the trial court erred in granting summary judgment to CB&T on this claim.

[1] While the new due date was not entirely definite, it was certain enough to be enforceable. See, e.g., *Cheeley Investments v. Zambetti*, 332 Ga. App. 115, 117-118 (1) (770 SE2d 350) (2015) (although price term was not definite, it satisfied requisite certainty required by Georgia law, which "leans against destroying contracts on the basis of uncertainty").

CB&T argues that this case is identical to, and therefore controlled by our decision in *Lovell v. Georgia Trust Bank*, 318 Ga. App. 860 (734 SE2d 847) (2012), which the trial court cited in its order granting summary judgment. That case is distinguishable, however, because the borrower never alleged the creation of a quasi-new agreement or the defense of mutual departure. Compare *L.D.F. Family Farm*, supra, 326 Ga. App. at 365 (2). Our decision in *Lovell* was based on the parol evidence rule and in reaching that decision we stated as follows:

> A promissory note is an unconditional contract whereby the maker engages that he will pay the instrument according to its tenor. It is well established that a promissory note may not be modified by the imposition of conditions not apparent on its face. The note being an unconditional promise, the contract is complete as written. Parol evidence may not be used to impose conditions which are not apparent from the face of the note. An oral agreement between the parties, made contemporaneously with the execution of the note or prior thereto relating to a condition not expressed in the note is incompetent to change the contract as represented on the face of the note.

(Citations and punctuation omitted.) *Lovell*, supra, 318 Ga. App. at 863 (2). We further explained that the borrower "did not come forward with evidence in the record showing that [the bank] intended to depart from or disregard the terms of the Note."

Id. at 864 (2). As the record before us shows some evidence of a mutual departure *Lovell* is distinguishable and not controlling here.[2]

CB&T further argues that the certified letters mailed to Reynolds demonstrate that CB&T never intended to depart from the express terms of the note. Reynolds has presented evidence, however, that CB&T sent those letters while simultaneously advising Reynolds to continue construction pending modification of the due date and dispatching a project inspector to assess his progress. Accordingly, a genuine issue of fact exists as to whether Reynolds was given reasonable notice of CB&T's intention to rely on the original terms of the note before it commenced foreclosure. See, e.g., *Curl v. Federal Sav. and Loan Assn. of Gainesville*, 241 Ga. 29 (244 SE2d 812) (1978).

2. Reynolds contends that the trial court erred in granting summary judgment to CB&T on his claim for grossly negligent infliction of emotional distress because CB&T wrongfully foreclosed on the property after the mutual departure.

> The elements of the tort are (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There

---

[2] The parol evidence rule applied in *Lovell* because the promise at issue was made *before* the last renewal was executed; here, the promise was made *after* CB&T and Reynolds executed the last renewal.

must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe.

(Citation and punctuation omitted.) *Mbigi v. Wells Fargo Home Mtg.*, 336 Ga. App. 316, 326 (4) (785 SE2d 8) (2016) (physical precedent only). "An intentional wrongful foreclosure may be the basis for an action for intentional infliction of emotional distress." Id. Given our finding in Division 1, supra, and the evidence in the record, issues of fact exist as to whether CB&T may have intentionally misled Reynolds so that it could foreclose on a newly-constructed home and not an incomplete construction project. Accordingly, the trial court erred in granting summary judgment to CB&T on this claim.

3. Reynolds contends that he has presented sufficient evidence to preclude the grant of summary judgment on his claim of promissory estoppel. His contention has merit.

In Georgia, the doctrine of promissory estoppel is codified at OCGA § 13-3-44. The essential elements of promissory estoppel are:

(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a

12

result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

(Citation, punctuation and footnote omitted.) *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 412 (5) (634 SE2d 162) (2006). "[T]he promise need not meet the formal requirements of a contract, [but] it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment." *Mooney v. Mooney*, 245 Ga. App. 780, 783 (538 SE2d 864) (2000).

Here, Reynolds' interrogatory responses show that CB&T agreed to modify the due date of the loan until Reynolds completed construction of the home or obtained a certificate of occupancy. It also sent out a project inspector to assess Reynolds' progress in completing the home. We find no merit in CB&T claims that any alleged promise that it would extend the due date until the date of completion was too vague or indefinite. "Although promissory estoppel does not apply to vague, indefinite promises, a trier of fact could conclude that [CB&T's promise to extend the due date until Reynolds completed construction of the home or obtained a certificate of occupancy] was sufficiently definite to be enforced." *Cheeley Investments v. Zambetti*, 332 Ga. App. 115, 119-120 (2) (770 SE2d 350) (2015) (promise to pay attorney fees and legal expenses sufficiently definite to be enforced).

13

A question of fact also exists as to the second element of promissory estoppel. According to Reynolds, CB&T encouraged him to complete construction in exchange for an extension of the due date. Moreover, in his interrogatory responses, Reynolds averred that he expended his own money and labor to complete the home in reliance on CB&T's promise that it would extend the due date.[3] "Questions of reasonable reliance are usually for the jury to resolve." *Ambrose v. Sheppard*, 241 Ga. App. 835, 837 (528 SE2d 282) (2000). As discussed above, CB&T clearly stood to benefit from the arrangement given that it could ultimately foreclose on a newly-constructed home instead of an incomplete construction project and its investment in the property mounted because the property value went up. Under these circumstances, a jury could find that CB&T should have expected Reynolds to rely on its promise to modify the due date.

---

[3] The note at issue provided that any change must be in writing and signed by the parties. While such a provision may foreclose a finding of reliance, "waiver of a written modification requirement in a contract may be established through the course of conduct between the parties." (Citation and punctuation omitted.) *Gerdes v. Russell Rowe Communications*, 232 Ga. App. 534, 536 (1) (502 SE2d 352) (1998). As detailed above, it is for a jury to decide whether the parties' conduct in this case amounted to a waiver and whether Reynolds' reliance was reasonable. See *Rental Equipment Group v. MACI*, 263 Ga. App. 155, 158 (1) (b) (587 SE2d 364) (2003).

There is also evidence that Reynolds relied on CB&T's promise to his detriment. In reliance on the promise of an extended due date, Reynolds chose to complete the house using his own money and labor. For these reasons, the trial court erred in granting CB&T's motion for summary judgment on Reynolds' promissory estoppel claim.

4. Finally, we address the trial court's grant of summary judgment to CB&T on Reynolds' claim for unjust enrichment. Reynolds seems to concede that if we find evidence of a mutual departure, he is precluded from asserting a claim for unjust enrichment. This is incorrect.

> Georgia law permits a plaintiff to proceed to trial on alternative theories of recovery. Thus, if a factfinder concludes that [CB&T] is liable on [Reynolds'] breach of contract theory, the issue of [CB&T's] liability under the alternative [theory] of unjust enrichment . . . would become moot. Conversely, if the factfinder concludes that [CB&T] did not breach any express contract, questions of fact would exist as to whether [CB&T] is liable under [the] alternative [theory].

(Citations and punctuation omitted.) *Campbell v. Ailion*, 338 Ga. App. 382, 388 (2) (790 SE2d 68) (2016).

> A claim of unjust enrichment will lie if there is no legal contract and the party sought to be charged has been conferred a benefit by the

15

party contending an unjust enrichment which the benefited party equitably ought to return or compensate for. The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received.

(Citations and punctuation omitted.) *Jones v. White*, 311 Ga. App. 822, 827-828 (1) (b) (717 SE2d 322) (2011). Here, as reflected by the evidence previously discussed in support of Reynolds' claim for promissory estoppel, a jury could find that CB&T encouraged Reynolds to confer a benefit upon CB&T by completing construction of the home before CB&T foreclosed. The trial court thus erred in granting summary judgment to CB&T on Reynolds' claim for unjust enrichment.

*Judgment reversed. Dillard, C. J., concurs. Ray, P. J., concurs fully in Divisions 1, 3, and 4 and concurs in judgment only in Division 2.*