**FOURTH DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and MARKLE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A1567, A19A1568. 280 PARTNERS, LLC et al. v. BANK OF
   NORTH GEORGIA; and vice versa.

McFADDEN, Chief Judge.

These related appeals arise from a suit on a promissory note secured by real property. The lender, Bank of North Georgia (the bank), alleges that the borrower, 280 Partners, LLC, defaulted on the note because 280 Partners failed to make certain payments required under it. 280 Partners and two of its principals who guaranteed the loan, Douglas Bonner and Mark Griswell, (collectively, the defendants) allege that the bank told them they did not need to make the payments while they were negotiating a renewal of the loan in anticipation of selling the property to a third party, Integrity Development Group, LLC, which ultimately declined to buy the property after speaking with the bank. In response to the bank's suit on the note, the

defendants counterclaimed for tortious interference with contractual or business relations and for invasion of privacy. The trial court granted summary judgment to the bank on its claims and the defendants' counterclaims (Case No. A19A1567), and it denied the bank's motion to dismiss the defendants' notice of appeal, which the bank based on a claim that the defendants had failed to timely file the transcript of the summary judgment hearing (Case No. A19A1568).

As detailed below, we find no error in the grant of summary judgment to the bank. The defendants admit that 280 Partners executed the note and that Bonner and Griswell executed the guarantees, there is also no dispute that 280 Partners failed to make all of the payments required by the written terms of that note, and the defendants have not pointed to any evidence giving rise to a genuine issue of material fact on the two affirmative defenses they argued to the trial court — that the parties had modified the terms of the note and that the bank breached a duty of good faith and fair dealing. The defendants have offered no argument or citation of authority on appeal in support of their counterclaim for tortious interference. And they have pointed to no evidence giving rise to a genuine issue of material fact on their counterclaim for invasion of privacy. So we affirm the judgment in Case No. A19A1567.

2

In light of our decision to affirm the summary judgment ruling, we dismiss as moot the bank's appeal from the order denying the bank's motion to dismiss the appeal from the summary judgment ruling in Case No. A19A1568.

1. *Summary judgment (Case No. A19A1567).*

(a) *Facts and procedural background.*

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Peterson v. Peterson*, 303 Ga. 211, 213 (1) (811 SE2d 309) (2018) (citations and punctuation omitted). "On appeal from an order granting or denying summary judgment, we conduct a de novo review, construing the evidence and all reasonable conclusions and inferences drawn therefrom in the light most favorable to the nonmovant." *State Farm Automobile Mut. Ins. Co. v. Todd*, 309 Ga. App. 213, 213-214 (1) (709 SE2d 565) (2011) (citation and punctuation omitted). But to the extent that a party's sworn testimony is self-contradictory without offering a reasonable explanation for the contradiction, we apply the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986), to discount the

testimony that is more favorable to that party. See *Hayward v. The Kroger Co.*, 317 Ga. App. 795, 798-799 (3) (a) (733 SE2d 7) (2012).

So viewed,[1] the evidence showed that on April 25, 2013, 280 Partners executed a promissory note that renewed an existing debt with the bank. The loan was secured by real property in Opelika, Alabama (the property) and subject to the personal guarantees of defendants Bonner and Griswell. It required 280 Partners to make seven monthly interest payments and to pay the outstanding balance on November 25, 2013. Bank officer John Hall, who oversaw 280 Partners' loan, signed the note on the bank's behalf.

On September 21, 2013, 280 Partners entered into an agreement to sell the property to Integrity. That agreement permitted Integrity to cancel it with notice to 280 Partners during a defined due diligence period that ended in mid-December 2013. 280 Partners told the bank about the agreement with Integrity and discussed renewing the loan to extend the maturity date until early 2014, after the anticipated sale of the property. Hall told 280 Partners that it did not need to make any payments on the note

---

[1] We note, however, that the bank has presented evidence disputing many of the facts set forth here, including what was said at meetings between it and 280 Partners and between it and Integrity.

4

while it was negotiating the renewal of the loan with the bank. 280 Partners made no further payment on the loan after September 23, 2013.

In October 2013, the bank drew up loan documents to renew the loan, which included a new note and a paper reflecting the amount of accrued interest on the loan to be paid in connection with the renewal. The new note provided for three monthly payments, beginning on December 5, and a payment of the outstanding loan balance on February 5, 2014. 280 Partners signed the new note on October 29, 2013 and returned it to the bank, but 280 Partners did not pay off the accrued interest. Although 280 Partners knew that a payoff was a condition of the loan renewal, Hall had told it that it did not need to pay that amount until Hall returned from a multi-week medical leave, at which time they would "get it straightened out." The bank did not sign the new note and the loan was not extended.

In late November 2013, around the time that the April 2013 note matured, principals of 280 Partners met with Hall, who had just returned to work from his leave. They discussed the anticipated sale of the property to Integrity, and 280 Partners agreed to put Hall in touch with John Hastings, Integrity's general manager. At this point, the bank still had not signed the renewal note and 280 Partners still had

not made the payoff of accrued interest required for renewal. Hall stated that he would address the renewal documents after speaking with Hastings.

Hall and Hastings met in mid-December 2013 and discussed the property. At that meeting, Hall told Hastings that 280 Partners was behind on its payments and "may be headed to foreclosure," and he indicated that if the bank foreclosed on the property it would be willing to sell the property to Integrity at a discount. Based on what Hall said at this meeting, Hastings decided to cancel Integrity's agreement with 280 Partners to buy the property. In a December 16 letter notifying 280 Partners of the cancellation, Hastings stated:

> I recently met with John Hall with The Bank of North Georgia to discuss our contract on the [property]. During our meeting, John indicated to me that if we were able to wait a while longer to purchase the property, we would be able to purchase it from the bank for a significant discount. Consequently, we will not be moving forward with the Contract. I hope you can understand, in this day and time, we need the best price we can get on the property.

The bank brought this suit on the promissory note against 280 Partners and the two guarantors, Bonner and Griswell. The defendants counterclaimed for tortious interference with contractual or business relations and for invasion of privacy. The

trial court granted summary judgment to the bank on all of the claims and counterclaims.

(b) *Suit on promissory note.*

The defendants argue that the trial court erred in granting summary judgment to the bank on the bank's suit on the April 2013 promissory note. "In an action on a promissory note, a claimant may establish a prima facie right to judgment as a matter of law by producing the promissory note and showing that it was executed. On a motion for summary judgment, the burden then shifts to the obligor to establish an affirmative defense to the claim[.]" *Lewis v. Ikner*, 349 Ga. App. 21, 25 (825 SE2d 443) (2019) (citations omitted). In support of its motion, the bank produced an executed promissory note and evidence that the defendants had not made all of the payments required under its terms. The defendants do not dispute that they executed the April 2013 note, and they have not alleged that they satisfied the terms of that note by paying off the debt by the November 2013 maturity date. Instead, the defendants argue that questions of fact exist as to two affirmative defenses.[2] First,

---

[2] These are the only two affirmative defenses for which the defendants offered any argument or citation to authority to the trial court below or to this court on appeal. So we do not consider whether the evidence, viewed most favorably to the defendants, would support any of their other affirmative defenses, such as estoppel. See *Heard v. City of Villa Rica*, 306 Ga. App. 291, 293-294 (1) (704 SE2d 915)

7

they argue that the parties modified the note to extend the maturity date. Second, they argue that the bank breached a duty of good faith and fair dealing implied in the note. We are not persuaded by either argument.

(i) *Modification of note.*

The defendants argue that there is evidence showing that the parties agreed 280 Partners would not have to repay the loan by the November 2013 maturity date established in the April 2013 note. But the defendants concede that the bank did not sign the renewal note with the later maturity date, and they do not contend that the bank otherwise agreed in writing to extend that date.

The Statute of Frauds required the modification to be in writing. As we have explained,

> [a]ny modification of a promissory note must be in writing because it falls within the Statute of Frauds. The Statute of Frauds is codified at OCGA § 13-5-30 and provides that in order to be enforceable, various types of agreements must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him. Pursuant to OCGA § 13-5-30 (7), the promissory note had to be and was executed in writing. As the promissory note had to be in writing under the Statute

(2010) ("we do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court").

of Frauds, so likewise, under the general rule, any proposed modification thereof, to be effective, must also have been in writing.

*Reynolds v. CB&T*, 342 Ga. App. 866, 868 (1) (805 SE2d 472) (2017) (citations and punctuation omitted). The defendants appear to concede this point. They state in their appellate brief that, "[o]bviously, the modified and renewed [n]ote would have to be in writing[.]" But they argue that their execution of the note was sufficient to effect this modification. It was not. The terms of the April 2013 note provided that "[n]o modification of this agreement may be made without your express written consent," with the term "your" referring to the bank.

The defendants argue that, even though the renewal note itself needed to be in writing, their alleged agreement with the bank to renew the note did not. This is not a meaningful distinction. The Statute of Frauds also "precludes evidence of [a lender's] alleged oral promise . . . to refinance [the] debt," *Stedry v. Summit Nat. Bank*, 227 Ga. App. 511, 515 (1) (489 SE2d 862) (1997), and the evidence of the negotiations leading to the preparation of the renewal loan package shows at most an agreement to agree, not a separate, enforceable contract. See *Hewitt Assoc. v. Rollins, Inc.*, 294 Ga. App. 600, 602 (1) (669 SE2d 551) (2008).

9

In addition, the defendants argue that they are excused from the requirement of a writing because the parties mutually departed from the note's terms. The parties to a contract, even a contract subject to the Statute of Frauds, may mutually depart from its terms and form a "quasi-new agreement." See *Reynolds*, supra at 868-869 (1). But there must be some consideration for that new agreement. "Where parties, in the course of the execution of a contract, depart from its terms *and pay or receive money under such departure*, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement." OCGA § 13-4-4 (emphasis supplied). See *Reynolds*, supra at 869 (1) ("although mutual departure ordinarily requires the receipt or payment of money, slight consideration may support a departure from the contractual terms"). Although the defendants pointed to evidence that the bank departed from the terms of the April 2013 note by telling 280 Partners that it did not need to make payments according to its terms, they did not point to evidence that any consideration was paid or received under this alleged departure. See OCGA § 13-4-4. So the defendants have failed to show that a genuine issue of material fact exists as to their mutual departure defense.

(ii) *Implied duty of good faith and fair dealing.*

The defendants claim that the bank breached an implied contractual duty of good faith and fair dealing by "deliberate[ly] fail[ing] to execute the renewal documents on the purported basis of the [defendants'] not having made the final interest payment after telling them *not* to make that payment[.]" (Emphasis in original.) "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. But the implied duty cannot be breached apart from the contractual provision to which it pertains[.]" *Ameris Bank v. Alliance Investment & Mgmt. Co.*, 321 Ga. App. 228, 233 (3) (a) (739 SE2d 481) (2013) (citations, punctuation, and footnote omitted). So to establish their affirmative defense of breach of the duty of good faith and fair dealing, the defendants "must establish that [the bank] owed a contractual obligation. However, [the defendants] have not claimed, let alone established, that there is a contractual obligation in the note [requiring the bank to execute the renewal documents and extend the maturity date or otherwise modify the terms of the loan]." *Secured Realty Investments v. Bank of North Ga.*, 314 Ga. App. 628, 630 (1) (b) (725 SE2d 336) (2012) (citation omitted). "Similarly, there can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Ameris Bank*, supra at 233-234 (3) (a) (citation and punctuation omitted). The

11

terms of the April 2013 note permitted the bank to demand payment of the loan in full by the November 2013 maturity date and hold 280 Partners in default if that payment was not made. So the defendants have failed to show that a genuine issue of material fact exists as to their defense of breach of a duty of good faith and fair dealing.

(c) *Counterclaim for tortious interference with contractual or business relations.*

The trial court granted the bank's motion for summary judgment on all claims and counterclaims, which included the defendants' counterclaim for tortious interference with contractual or business relations. The defendants enumerate as error the trial court's overall grant of the summary judgment motion, but they offer no argument or citation to authority pertaining to the trial court's grant of summary judgment on the tortious interference counterclaim. We therefore deem abandoned any claim that the trial court erred in granting summary judgment to the bank on the tortious interference counterclaim. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

(d) *Counterclaim for invasion of privacy.*

The defendants argue that the trial court erred in granting summary judgment to the bank on their counterclaim for invasion of privacy. Invasion of privacy encompasses several different torts. *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 751 (2) (740 SE2d 622) (2013). The defendants' counterclaim in this case appears to fall within the tort described as "public disclosure of embarrassing private facts about the plaintiff," id., or here, the defendants as counterclaim-plaintiffs.[3] They argue in their appellate brief that this counterclaim was based on "Hall's unauthorized and unlawful disclosure of private, non-public financial information held by [the bank] in an effort to sell the [p]roperty to Integrity."

> The tort of invasion of privacy, in the manner alleged by the defendants,
>
> protects the right of a person to be free from . . . the publicizing of one's private affairs with which the public has no legitimate concern. There are at least three necessary elements for recovery under this theory: (a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; [and] (c) the matter made public must be offensive and

---

[3] The other torts constituting "invasion of privacy" are "intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; . . . publicity which places the plaintiff in a false light in the public eye; and . . . appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Bullard*, 292 Ga. at 752 (2) (punctuation omitted).

13

objectionable to a reasonable [person] of ordinary sensibilities under the circumstances.

*Napper v. Ga. Television Co.*, 257 Ga. 156, 160-161 (c) (356 SE2d 640) (1987) (citations and punctuation omitted). Accord *Walker v. Walker*, 293 Ga. App. 872, 875 (2) (c) (ii) (668 SE2d 330) (2008). The defendants characterize Hall's disclosure of information about 280 Partners' loan to Hastings as a "public disclosure" of private facts. But it is undisputed that the disclosure was to a single person, and we have held that "'to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons' is not sufficient to constitute a public disclosure. Restatement of Torts 2d, § 652D (comment a)." *Mayor & City Council of City of Richmond Hill v. Maia*, 336 Ga. App. 555, 567 (4) & n. 13 (784 SE2d 894) (2016) (noting that "Georgia courts have cited to the Restatement of Torts as persuasive authority in the context of claims for invasion of privacy"), reversed on other grounds by *City of Richmond Hill v. Maia*, 301 Ga. 257 (800 SE2d 573) (2017). The defendants cite *Ameris Bank v. Alliance Investment & Mgmt. Co.*, supra, 321 Ga. App. 228, in support of their argument that the facts in this case could establish an invasion of privacy. But we find that decision unpersuasive, because it did not address the merits of the invasion of privacy claim. See id. at 231 (1). Because the

14

defendants cannot demonstrate a genuine issue of material fact as to at least one element of their counterclaim for invasion of privacy, the trial court properly granted summary judgment to the bank on this counterclaim.

2. *Motion to dismiss appeal (Case No. A19A1568).*

The bank moved to dismiss the defendants' appeal from the summary judgment ruling pursuant to OCGA § 5-6-48 (c), which permits a trial court to "order that [an] appeal be dismissed where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party." The trial court denied this motion and the bank filed this appeal from that ruling. Because we affirm the trial court's grant of summary judgment to the bank, we do not need to address whether the trial court erred in denying the bank's motion to dismiss the appeal from the summary judgment ruling. Instead, we dismiss as moot the bank's appeal from the ruling denying the motion to dismiss the appeal.

*Judgment affirmed in Case No. A19A1567. Appeal dismissed as moot in Case No. A19A1568. Doyle, P.J., and Markle, J., concur.*