301 Ga. 257
FINAL COPY

S16G1337. CITY OF RICHMOND HILL et al. v. MAIA.

HUNSTEIN, Justice.

Following the suicide death of her 14-year-old daughter, Appellee Laura Lane Maia filed an action against the mayor and city council of the City of Richmond Hill (collectively "the City") and Douglas Sahlberg, individually and in his capacity as an officer with the Richmond Hill Police Department (collectively "Appellants"), alleging wrongful death and associated claims.[1] In response, Appellants moved for summary judgment, asserting that Appellee could not prove proximate cause; the trial court denied the motion. The Court of Appeals affirmed the denial of summary judgment in a plurality decision. See Mayor and City Council of City of Richmond Hill et al. v. Maia, 336 Ga. App. 555 (2) (784 SE2d 894) (2016). We granted certiorari to review Division 2 of the decision below; for the reasons discussed herein, we conclude that Appellee

[1] Following the Court of Appeals's decision below, the only remaining claims are a wrongful death claim against the City and Sahlberg in his official capacity, and a survival claim and a claim for punitive damages against Sahlberg in his individual capacity.

cannot demonstrate proximate cause and, therefore, reverse the decision of the Court of Appeals.

On February 14, 2011, Appellee's daughter, Sydney Sanders, attempted suicide by cutting herself in the neck, chest, and abdomen, and she was subsequently taken to the hospital for medical treatment. Officers with the Richmond Hill Police Department ("RHPD"), including Officer Douglas Sahlberg, responded to the hospital to investigate, and Sanders's injuries were photographed by the officers.[2] Later that month, Sahlberg accessed those photographs on his work computer and showed them to his daughter, K. S., who was a classmate of Sanders; shortly thereafter, K. S. was seen using her cell phone to show the images to other classmates, and Sanders was distraught and mortified to discover that the photographs had been shared. On April 5, 2011, the date on which Sanders would eventually take her life, RHPD responded to a "suspicious person" call at Sanders's home. Officers discovered Sanders — who had stayed at home from school that day — alone with her boyfriend without permission; officers also observed an unopened condom fall out of the

---

[2] The record suggests that the photos depict Sanders in her underclothes.

boy's trousers. Later in the day, Sanders lamented to her mother how she felt humiliated and belittled by the responding officers and wondered, in light of the dissemination of the injury photos, what further information the officers would disclose. In a subsequent conversation with her softball coach, Sanders went on a "rampage," venting her frustration about the "photos going around the school," about school gossip, about disappointing her mother, and about her struggles with both her boyfriend and sister. Despite Appellee's attempt to keep Sanders supervised, Sanders was left at home alone that evening, and she took her own life.

In her subsequent complaint, Appellee averred, inter alia, that Sahlberg had a duty to keep the injury photographs confidential, that he had breached that duty, that Sahlberg should have known that the publication of the photographs created a reasonable apprehension that Sanders would further harm herself, and that Sanders's death was caused by Sahlberg's negligent conduct. Appellants subsequently moved for summary judgment, asserting that Appellee could not demonstrate causation because, under Georgia law, suicide is generally an independent act which breaks the chain of causation from the events preceding the death; Appellants also averred that the exceptions to the general rule

3

regarding suicide are inapplicable in this case. In response, Appellee argued that the question of proximate cause, even in suicide cases, turns on the question of the foreseeability of harm and that such an issue is a jury question. The trial court denied the motion with a one-page order and granted a certificate of immediate review. A divided Court of Appeals affirmed, concluding that, because "Sanders's suicide was a reasonably foreseeable consequence of Sahlberg's negligent conduct, [Sanders's] act of suicide was not an intervening act that would preclude Sahlberg's breach of duty from constituting the proximate cause of that injury." Maia, 336 Ga. App. at 563. Appellants contend that the Court of Appeals misstated and misapplied the law; Appellee argues, however, that the foreseeability test adopted below is sound. Because Georgia law generally deems suicide an unforeseeable intervening cause that breaks any causal connection between alleged negligent conduct and the resulting death, and, because the narrow exceptions to that rule do not apply here, we agree with Appellants.

1. "It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." (Citations and punctuation omitted.) Johnson v.

4

American Nat. Red Cross, 276 Ga. 270, 272 (578 SE2d 106) (2003). "[A] plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury" (Citation and punctuation omitted.) Atlanta Obstetrics and Gynecology Group, P.A. v. Coleman, 260 Ga. 569, 569 (398 SE2d 16) (1990). "Inextricably entwined with concepts of negligence and proximate cause is a notion of foreseeability." (Citation and punctuation omitted.) Brandvain v. Ridgeview Institute, Inc., 188 Ga. App. 106, 115 (372 SE2d 265) (1988). To that end, the well-established doctrine of intervening causes states that

> there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the defendant, which was not *foreseeable* by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury.

(Citation and punctuation omitted; emphasis supplied.) McQuaig v. McLaughlin, 211 Ga. App. 723, 726 (440 SE2d 499) (1994).

As the Court of Appeals correctly recognized below, it has long been the rule in Georgia that, generally speaking, suicide is deemed an unforeseeable intervening cause of death which absolves the tortfeasor of liability. Maia, 336

5

Ga. App. at 562 (quoting Dry Storage Corp. v. Piscopo, 249 Ga. App. 898, 900 (550 SE2d 419) (2001)).  See also Stevens v. Steadman, 140 Ga. 680, 685 (79 SE 564) (1913) (concluding that threatening letter sent by business partners may have contributed to decedent's state of mind at the time of his suicide but that the suicide could not have been "said to be the legal and natural result of the act of the defendants"); Appling v. Jones, 115 Ga. App. 301, 303 (1) (154 SE2d 406) (1967)  (physical precedent only) (recognizing the "practically unanimous rule" that suicide "is a new and independent agency which does not come within and complete a line of causation from the wrongful act to the death and therefore does not render defendant liable for the suicide" (citation and punctuation omitted)).  Though it is true that, generally speaking, the foreseeability of an intervening cause maintains the causal connection between the original wrongful conduct and the subsequent injury, see, e.g., Williams v. Grier, 196 Ga.  327, 336 (26 SE2d 698) (1943), we stress that the usual foreseeability principle *does not* apply to cases involving suicide because suicide is generally deemed an unforeseeable intervening cause as a matter of law, and the Court of Appeals's apparent reliance on the general foreseeability principle in its decision below

6

was error.[3]  Instead, Georgia law has carved out two deviations from the general rule that suicide breaks the causal connection between an alleged negligent act and the resulting death: the so called rage-or-frenzy exception and the special-relationship exception.[4]

Regarding the first exception, "[w]here the tortfeasor's wrongful act causes the injured party to kill himself during a rage or frenzy, or in response to an uncontrollable impulse, the wrongful act is considered to be the proximate cause of the suicide." (Footnote omitted.)  Dry Storage Corp. v. Piscopo, 249 Ga. App. at 900.[5]  This is so because, in such circumstances, the resulting act of suicide "is not a voluntary one, but is involuntary, and is not an act which breaks

---

[3] We do not mean to imply that foreseeability plays no role in cases that fall within two of the narrow exceptions discussed herein, but only that foreseeability does not, alone, overcome the principle that suicide is deemed an unforeseeable intervening act that severs liability of a negligent tortfeasor.

[4] This Court in Stevens v. Steadman suggested that liability for suicide might arise where a party encourages, counsels, or aids and abets another in committing suicide.  140 Ga. at 685-686.  We have not been asked to consider whether this century-old exception remains good law, and, because we need not resolve that issue in this case, we leave that question for another day.

[5] As discussed below, we disapprove Dry Storage Corp. v. Piscopo to the extent that it fails to fully address the exceptions to the general rule regarding proximate cause in cases involving suicide; nevertheless, it remains good law with respect to its discussion regarding the rage-or-frenzy exception.

7

the causal connection between the homicide and the act which caused the injury." Elliott v. Stone Baking Co., 49 Ga. App. 515, 515 (176 SE 112) (1934). In Elliott, the Court of Appeals applied this rage-or-frenzy exception in a case where a decedent became "mentally irresponsible and insane" as a result of a head injury caused by a car accident, and, "while in this insane condition and as a result of this condition, he killed himself by shooting himself in the head." 49 Ga. App. at 516. The rage-or-frenzy exception sets a high bar, and is not met simply by evidence of depression or anger, see Dry Storage Corp. v. Piscopo, 249 Ga. App. at 900, or by evidence that a decedent was "'dazed,' 'stunned,' 'shocked,' 'extremely irrational' and 'violent.'" Appling, 115 Ga. App. at 304. Instead, it requires a showing that the suicide was a product of insanity, delirium, an uncontrollable impulse, or was accomplished without conscious volition to produce death.[6] Id.

Georgia courts have also deviated from the general rule that suicide absolves an alleged tortfeasor of liability in cases involving a special

---

[6] We note that prior cases applying the rage-or-frenzy exception have involved a physical injury that has caused the decedent's rage, frenzy, or uncontrollable impulse. See, e.g., Appling, 115 Ga. App. at 303; Elliott, 49 Ga. App. at 516.

8

relationship between the tortfeasor and decedent, such as where a tortfeasor owes the unusual duty to prevent the decedent from harm. As Judge Dillard recognized in his dissent below, this special duty may arise in cases involving a doctor-patient or hospital-patient relationship. See, e.g., Purcell v. Breese, 250 Ga. App. 472 (1) (552 SE2d 865) (2001); Brandvain, 188 Ga. App. at 114-118; Misfeldt v. Hosp. Auth. of City of Marietta, 101 Ga. App. 579, 583-584 (115 SE2d 244) (1960). This special relationship may also exist between a police officer or jailer and his detainee or prisoner, because a duty to protect arises under such circumstances. See Kendrick v. Adamson, 51 Ga. App. 402, 402 (180 SE 647) (1935) ("A sheriff owes to a prisoner placed in his custody a duty to keep the prisoner safely and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him."). See also Thomas v. Williams, 105 Ga. App. 321, 326 (3) (124 SE2d 409) (1962) (recognizing that Kendrick v. Adamson establishes that "a special relation[ship] exists between an officer and the prisoner in his custody"). The language of these decisions is clear: the duty is not owed to the public at large, but, instead, the duty is owed specifically to prisoners or detainees.

We note that the Court of Appeals has failed to consistently recognize the

9

special-relationship exception as a general matter, see, e.g., <u>Dry Storage Corp.</u> <u>v. Piscopo</u>, 249 Ga. App. at 900 (implying that the rage-or-frenzy exception is the lone exception to the general rule regarding suicide), and, further, has failed to apply the special-relationship exception as it specifically pertains to law enforcement, even in cases involving jail suicides, see <u>Harvey v. Nichols</u>, 260 Ga. App. 187 (2) (581 SE2d 272) (2003) (addressing only the rage-or-frenzy exception in case involving suicide of prisoner). See also <u>Tucker v. Pearce</u>, 332 Ga. App. 187, 191-193 (771 SE2d 495) (2015) (relying on <u>Harvey</u> and applying only rage-or-frenzy exception in jail suicide case), aff'd on other grounds, <u>Pearce v. Tucker</u>, 299 Ga. 224 (787 SE2d 749) (2016). To the extent that these decisions and others fail to identify and apply the special-relationship exception, they are disapproved.

2. Though questions of proximate cause are generally left to a jury, the law in this area is clear and the facts of this case are plain; as such, this Court may resolve the question of proximate cause as a matter of law. See, e.g., <u>McAuley v. Wills</u>, 251 Ga. 3 (5) (303 SE2d 258) (1983). As discussed above, subject to narrow exceptions — which Appellee does not squarely argue to be applicable — suicide is an intervening act which breaks the connection between

10

an alleged negligent act and the resulting death, thus absolving the tortfeasor of liability.

As applied in this case, the Court of Appeals correctly noted that "Sahlberg was not a medical professional, nor was Sanders in his custody or care." Maia, 336 Ga. App. at 563. Though the Court of Appeals intimated that Sahlberg owed a general duty to protect both the general public and Sanders, there is no evidence that Sahlberg owed a specific duty to Sanders to protect her from harm; in fact, the only allegation is that Sahlberg was negligent in his treatment of the injury photos, not that Sahlberg owed or violated some duty to protect Sanders. At the time of the alleged negligent conduct and at the time of the subsequent suicide, Sahlberg had no ability to supervise Sanders, to make decisions about her healthcare, or to exercise custody or control over her. Maia, 336 Ga. App. at 578-579 (Dillard, J., dissenting). As such, the special-relationship exception does not apply here. Likewise, neither Sanders's continued distress regarding the disclosure of the photos nor her subsequent "rampage" wherein she ranted to her softball coach about the various stressors in her life, is sufficient to evidence that Sanders killed herself during a rage or frenzy, or in response to an uncontrollable impulse. See Elliott, supra. In fact,

11

the record indicates that Sanders's final conversation with her mother was calm and rational. Accordingly, this exception does not apply.

We agree with Judge Dillard that "Sahlberg's flagrant violation of RHPD's policy regarding confidentiality was undoubtedly wrongful and it may indeed have been a factor in Sanders's tragic decision to take her own life." Maia, 336 Ga. App. at 579 (Dillard, J., dissenting). However, under longstanding Georgia law, Sanders's suicide acted as an intervening cause that extinguished any causal connection between Sahlberg's wrongful conduct and Sanders's death, and Appellee's claims fail.

Accordingly, Appellants were entitled to summary judgment in their favor, and the Court of Appeals erred when it affirmed the trial court's denial of that motion.

Judgment reversed. Hines, C. J., Benham, Nahmias, Blackwell, Boggs and Grant, JJ., concur. Melton, P. J., concurs specially. Judge Clarence F. Seeliger dissents. Peterson, J., disqualified.

12

MELTON, Presiding Justice, concurring specially.

While I agree with the end result reached by the majority, I write separately to express my concern that the majority may be making too much of the idea that a "special relationship" did not exist between Sahlberg and Sanders simply because Sahlberg had no ability to supervise her or exercise custody or control over her. In my view, the range of possibilities for creating a special relationship may be broader than that which is implied by the majority. Indeed, Sahlberg did have some duty to Sanders based on police policies that prohibited him from revealing injury photos from Sanders' attempted suicide to others. While the existence of the photos and Sahlberg's violation of policies to keep such photos private may not have created a special relationship between Sahlberg and Sanders, it does beg the question of what circumstances outside of direct supervision or exercising custody or control over an individual might give rise to such a relationship.

To me, the key to this case is foreseeability — specifically the fact that Sanders' suicide was an unforeseeable event in light of the manner in which

Sahlberg revealed the injury photos to his daughter in a private setting.[7]

Regardless of whether a special relationship existed here, I do not believe that causation could be proven under the current facts. Accordingly, I agree with the majority's conclusion that Appellants were entitled to summary judgment.

---

[7] Of course, this case might be entirely different if Sahlberg released the photos, for example, at a school assembly where Sanders was in attendance.

SEELIGER, Judge, dissenting.

Recognizing that it has long been the rule in Georgia that, generally speaking, "'suicide is an unforeseeable intervening cause of death which absolves the tortfeasor of liability,'"[8] the specific facts here demand a jury should decide whether Sahlberg is absolved. While "'a wrongdoer is not responsible for a consequence which is 'merely possible, . . . but only for a consequence which is probable, according to ordinary and usual experience,'"[9][10] a jury could find that Sahlberg should have known that if the pictures of Sanders's self-inflicted wounds were disseminated that it was "probable" that Sanders would again attempt suicide, especially given that she had attempted suicide just the previous month.

The specific facts of this case should not be limited by the two exceptions set by prior precedent where a defendant knew of the previous attempted

---

[8] Mayor and City Council of City of Richmond Hill v. Maia, 336 Ga. App. 555, 562 (784 SE2d 894) (2016) (quoting Dry Storage Corp. v. Piscopo, 249 Ga. App. 898, 900 (550 SE2d 419) (2001)).

[9] Tucker v. Pearce, 332 Ga. App. 187, 191 (771 SE2d 495) (2015) (citation omitted), aff'd on other grounds, Pearce v. Tucker, 299 Ga. 224 (787 SE2d 749) (2016).

suicide, and committed flagrant acts of negligence against a known policy of confidentiality within close proximity to the prior attempted suicide.

I would uphold the trial court's decision denying the motion for summary judgment and the decision of the Court of Appeals. A jury should hear this case.

Decided May 30, 2017.

Certiorari to the Court of Appeals of Georgia — 336 Ga. App. 555.

Oliver, Maner, Benjamin M. Perkins, Patrick T. O'Connor; Carlock, Copeland & Stair, Lauren E. H. Meadows; Ray C. Smith, for appellants.

Jones, Osteen & Jones, Billy N. Jones, Carl R. Varnedoe, for appellee.

Susan J. Moore, Sam L. Brannen, Jr.; James R. Westbury, Jr.; Kelly L. Pridgen, G. Joseph Scheuer, amici curiae.

2