NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 24, 2023

S22G0747.  BELL v. THE STATE.

ELLINGTON, Justice.

Following a jury trial, appellant Cortney Bell was found guilty of murder in the second degree, cruelty to children in the second degree, and felony contributing to the dependency of a minor in connection with the death of her infant daughter, Caliyah. The Court of Appeals reversed Bell's convictions for second degree murder and cruelty to children on appeal, concluding that the evidence was insufficient to support those charges. *Bell v. State*, 362 Ga. App. 687, 699-703 (1), (2) (870 SE2d 20) (2022). It affirmed her conviction for felony contributing to the dependency of a minor, and we granted certiorari to determine whether the Court of Appeals erred in holding that the evidence was legally sufficient to support Bell's conviction on that charge. Because we conclude based on the

facts of this case that the evidence was insufficient to authorize a jury to conclude that Caliyah's death was proximately caused by Bell's conduct as alleged in the indictment, we reverse the judgment of the Court of Appeals.[1]

The evidence presented at trial showed the following. In October 2017, Bell lived with her boyfriend and co-defendant, Christopher McNabb, and their two children, C.M., who was two years old, and the victim, who was born on September 23, 2017. On the evening of October 6, 2017, Bell and McNabb smoked methamphetamine and later went to bed in their bedroom while their children slept. They both got up the next morning at 5:00 a.m. to change Caliyah's diaper and feed and dress her in clean pajamas. Bell then fell asleep on the living room couch until she was awakened around 9:30 a.m. by the sound of McNabb's phone when

---

[1] The State's petition for certiorari, in which the State sought to appeal the Court of Appeals' decision reversing Bell's convictions for murder in the second degree and cruelty to children in the second degree, was denied by this Court. Accordingly, our review on certiorari is limited to the merits of the Court of Appeals' decision related to Bell's conviction for felony contributing to the dependency of a minor.

he received a text message.[2] Bell went back to sleep until around 10:30 a.m., when C.M. woke her and said that Caliyah was gone. Bell called 911 after she could not find Caliyah but found her pajamas on the bathroom floor. Bell told investigators that she had last been with Caliyah at her 5:00 a.m. feeding and that both children "were okay" when she was awakened at 9:30 a.m. by the sound of McNabb's phone. While being questioned by a sheriff's deputy, Bell stated that she did not know of anyone who would take Caliyah, but that McNabb had been involved in a fight with a friend, Matthew Lester, about six weeks earlier.[3] She also said that McNabb had never hit her, that she and McNabb "were not on drugs," and that she had not smoked marijuana in six weeks and

---

[2] In her statement to police, Bell said that she thought both she and McNabb went back to sleep on the couch after Caliyah's 5:00 a.m. feeding. Other evidence presented at trial showed that McNabb stayed awake for some period of time after the 5:00 a.m. feeding, and he then either fell asleep on the couch or was pretending to be asleep on the couch when he received a text at 9:30 a.m.

[3] Investigators later learned that Lester and another man had come to Bell's home in September 2017, before Caliyah was born, to use drugs. McNabb became angry with Lester, attacked him with brass knuckles, and threw him out of the home. Neither Bell nor C.M. were in the home at the time this incident occurred.

had not smoked methamphetamine in at least three years. There were no signs of any type of trauma in the bedroom where Caliyah had been sleeping with her sister and no signs of forced entry into the home.

Caliyah's body was discovered the next day in a wooded area close to her home. An autopsy revealed that she died from blunt impact injuries to her head and that she had numerous fractures to the top and base of her skull, bruising to her left cheek and left jawline, a cut underneath one of her eyes, and the upper palate of her mouth was lacerated from front to back. A medical expert testified that Caliyah had no healing bruises or evidence of previous injuries and that her injuries would have resulted in almost immediate death.

After Caliyah's body was discovered, Bell admitted to investigators that she, Bell, had been physically abused by McNabb, and that the abuse caused bruising on her back, arms, and legs. Bell explained in later interviews that McNabb had never abused either of the children. There was no evidence that Caliyah or her sister had

4

been physically abused before Caliyah's death.

McNabb was arrested on October 7, 2017, and charged with murder and other crimes related to Caliyah's death. A jury found him guilty of all charges, and his convictions were affirmed by this Court. See *McNabb v. State*, 313 Ga. 701 (872 SE2d 251) (2020). Bell was arrested in January 2018, and pertinent to this appeal, she was charged with and convicted of felony contributing to the dependency of a minor. The Court of Appeals affirmed Bell's conviction on that charge, concluding that although Bell's "acts of neglect were not the sole proximate cause of the victim's death, the evidence was sufficient for the jury to conclude that those acts played a substantial part in [the victim's] death and that death was a reasonably probable consequence of that neglect." *Bell*, 362 Ga. App. at 706 (3). In support of its conclusion, the Court of Appeals relied on evidence showing that Bell used methamphetamine and marijuana on a regular basis and allowed McNabb and others to do the same in her house and that McNabb had hit Bell both before and after Caliyah was born. Id. at 705-706 (3).

Bell contends that the Court of Appeals erred by concluding that the evidence was sufficient to support her conviction for felony contributing to the dependency of a minor because it failed to establish that her acts or omissions proximately caused Caliyah's death. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). We evaluate a challenge to the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict, and asking whether any rationale trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which she was convicted. See id.

In Count 3 of its indictment, the State charged Bell with felony contributing to the dependency of a minor in violation of OCGA § 16-12-1 (b) (3) and (d.1) (1). The indictment alleged that Bell caused Caliyah's death by failing "to provide proper parental care" and "supervision necessary for [Caliyah's] well-being, said act resulting in [Caliyah] being a deprived child."[4] A person commits the crime of

---

[4] Although the crime occurred and Bell's indictment issued after the Juvenile Code was amended to eliminate the term "deprived child" and use,

6

contributing to the dependency of a minor when such person "[w]illfully commits an act or acts or willfully fails to act when such act or omission would cause a minor to be adjudicated to be a dependent child[.]" OCGA § 16-12-1 (b) (3). A "dependent child" for purposes of this appeal is defined as a child who has been "abused or neglected and is in need of the protection of the court."[5] OCGA § 15-11-2 (22) (A).

The misdemeanor offense of contributing to the dependency of a minor does not require as an element that a particular result come from the accused's acts. To sustain a conviction for felony contributing to the dependency of a minor as charged in this case, however, the State must prove an additional element, that the act or omission that created the child's dependency has produced a particular result. OCGA § 16-12-1 (d.1) (1). By the plain terms of the

instead, the term "dependent child," the indictment nonetheless used the old terminology, referring to the victim in the indictment as a "deprived child." See OCGA § 15-11-2 (22).

[5] OCGA § 15-11-2 (22) also defines a "dependent child" as a child who "[h]as been placed for care or adoption in violation of law" or "[i]s without his or her parent, guardian, or legal custodian."

statute, to be guilty of felony contributing to the dependency of a minor, the act or omission that created the child's dependency must have "resulted in the serious injury or death" of the child. Id.

The phrase "resulted in the serious injury or death of a child" in OCGA § 16-12-1 (d.1) (1) has not been previously interpreted by this Court. It is well-established, however, that the "connection that criminal law requires between the conduct and the result is proximate cause." *Daddario v. State*, 307 Ga. 179, 186 (2) (a) (835 SE2d 181) (2019). See *State v. Jackson*, 287 Ga. 646, 649 (2) (697 SE2d 757) (2010) ("Cause" in the felony murder statute means proximate cause.). As we have stated, this is because

> Georgia is a proximate cause state. When another meaning is not indicated by specific definition or context, the term "cause" is customarily interpreted in almost all legal contexts to mean "proximate cause" — that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred.

Id. at 648 (2) (citation and punctuation omitted). See *Hall v. Wheeling*, 282 Ga. 86, 86 (1) (646 SE2d 236) (2007) (interpreting phrase "physically injures" in aggravated child molestation statute

to be synonymous with "causing physical injury"); *In the Interest of B. L. M.*, 228 Ga. App. 664, 664-665 (1) (492 SE2d 700) (1997) (applying proximate cause analysis to charge of reckless abandonment under OCGA § 16-5-72, a statute prohibiting the abandonment of a child that results in death). See also 1 Wayne R. LaFave, Substantive Criminal Law § 1.2 (b) (3d ed., Oct. 2022 update) (describing as one of the "basic premises which underlie the whole of the Anglo-American substantive criminal law" the proposition that "as to those crimes which require not only some forbidden conduct but also some particular result of that conduct, the conduct must be the 'legal cause' (often called 'proximate cause') of the result").

Proximate cause is "that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred." *Jackson*, 287 Ga. at 648 (2) (citation and punctuation omitted). In a criminal case, proximate cause exists if the act of the accused "directly and materially contributed to the happening of a

subsequent accruing immediate cause of death," id. at 652 (2) (citation omitted), and it "imposes liability for the reasonably foreseeable results of criminal (or, in the civil context, tortious) conduct if there is no sufficient, independent, and unforeseen intervening cause." Id. at 654 (3). See also *Skaggs v. State*, 278 Ga. 19, 19-20 (1) (596 SE2d 159) (2004). As a general rule, an intervening act is reasonably foreseeable if it ensues "in the ordinary course of events" or is "set in motion by the original wrong-doer." *Jackson*, 287 Ga. at 651 (2) n.4 (citation omitted). With regard to when a result or consequence of a criminal or negligent act is "reasonably foreseeable," we have stated that a person

> is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. It is important to recognize that "probable," in the rule as to causation, does not mean "more likely than not," but rather "not unlikely"; or, more definitely, such a chance of harm as would induce a prudent man not to run the risk[.]

*Johnson v. Avis Rent A Car System, LLC*, 311 Ga. at 592 (citations

10

and punctuation omitted).[6] In other words, "probable" means "such a chance of harmful result that a prudent man would foresee" the risk at issue here, i.e. the risk of serious injury or death. See id.

Applying these principles, we conclude that the evidence was insufficient to authorize the jury to conclude that Bell's failure to provide proper parental care, as alleged by the State, was the proximate cause of Caliyah's death.[7] It is important to recognize at the outset what this case is and what it is not. Based on the language of the indictment, Bell could be found guilty of felony contributing

---

[6] We note that while civil cases like *Johnson v. Avis Rent A Car System, LLC*, can be instructive regarding the concept of proximate cause and the related issues of foreseeability and probability, see *Jackson*, 287 Ga. at 654 (3), they can be less helpful in terms of whether a particular set of facts meets the standard, given the different burdens of proof involved.

[7] With regard to Bell's charge of felony contributing to the dependency of a minor, the jury was instructed that "[a] person commits the offense of contributing to the deprivation or dependency of a minor, or causing a child to be placed in need of services when such person willfully commits an act or acts, or willfully fails to act when such act or omission would cause a minor to be adjudicated to be a dependent child." Jurors were also told that "dependent child" means "a child who has been abused or neglected and is in need of protection of the court." There is no evidence, however, that defense counsel requested, or the trial court gave any instruction to jurors about, what elements the State needed to prove to sustain a conviction for felony contributing to the dependency of a minor, i.e., that the defendant's acts or omissions that created the dependency "resulted in the serious injury or death of the child." Nor were they given any instructions related to the issue of proximate causation.

11

to the dependency of a minor if the evidence was sufficient for a rational jury to find that Caliyah's death was caused by or was the reasonably foreseeable result of Bell's failure to provide Caliyah with proper parental care. The State attempted to show the required causal connection under two theories.

Under the first theory, the State argued that Bell's use of drugs or her tolerance of drug use by others in the home contributed to Caliyah's death. But there was no evidence that Caliyah died from the ingestion of drugs or that Bell's drug use proximately caused her death. Compare *Williams v. State*, 298 Ga. 208, 213 -214 (2) (b) (779 SE2d 304) (2015). Indeed, the State's medical expert testified that the immediate cause of Caliyah's death was blunt force injuries to her head. Although the evidence showed that Bell and McNabb used methamphetamine the night before Caliyah's death, it also showed that Caliyah was fed and put to bed and that both of her parents checked on her at 5:00 a.m. There was no evidence that as a consequence of her drug use, Bell was unable to care for Caliyah or was unable to wake up.

Nor was any evidence offered, either anecdotal or through expert testimony, demonstrating that it was not merely possible, but probable, that Bell's tolerance of McNabb's drug use would lead to his violent conduct toward Caliyah. Compare *Martin v Six Flags Over Georgia II, L.P.*, 301 Ga. 323, 332 (II) (A) (801 SE2d 24) (2017) (Gang attack at amusement park bus stop was reasonably foreseeable where the evidence showed there had been multiple incidents of gang disturbances in the amusement park and the attack on the victim started in the amusement park.). And there was no evidence presented that drug use, by itself, foretells violent acts against children. Given the dearth of evidence presented at trial to support the State's first theory of Bell's criminal responsibility, we cannot say that the evidence was sufficient as a matter of constitutional due process to authorize the jury to conclude that Caliyah's death by blunt force injuries was a reasonably foreseeable consequence of either Bell's or McNabb's drug use. See *Jackson v. Virginia,* 443 U. S. at 319 (III) (B). Compare *Virger v. State*, 305 Ga. 281, 289 (3) (824 SE2d 346) (2019) (Evidence that defendant failed

13

to seek medical attention for child after her co-defendant injured the child was sufficient to authorize jury to find that defendant's failure to seek medical aid was a proximate cause of the child's death.); *Johnson v. State*, 292 Ga. 856, 857-858 (1) (742 SE2d 460) (2013) (The jury could reasonably conclude the defendant's criminal negligence proximately caused the child victim's death from ingestion of methadone where the evidence showed the victim had fallen ill for several hours before the defendant sought medical attention and the defendant had previously given the victim crushed prescription Xanax in his milk.).

The second basis for the State's theory of Bell's guilt was that Caliyah's death, even though directly caused by McNabb's criminal actions, was foreseeable because Bell failed "to provide proper parental care" by choosing to live with McNabb, who had been violent towards Bell. The question to be decided under this theory is whether there was sufficient evidence to authorize the jury to conclude that Caliyah's death was a reasonably foreseeable consequence of Bell's decision to live with McNabb.

14

As stated above, proximate cause imposes liability for an act or omission if there is no sufficient, independent, and unforeseen intervening cause. And the doctrine of intervening cause provides that there can be no proximate cause where an independent act or omission of someone other than the defendant, which is unforeseeable by the defendant and is itself sufficient to cause an injury, intervenes between the defendant's act or omission and the injury. *City of Richmond, v. Maia*, 301 Ga. 257, 259 (1) (800 SE2d 573) (2017). See also *Menzies v. State*, 304 Ga. 156, 161 (II) (816 SE2d 638) (2018) (applying the concept of "intervening cause" in a criminal case). Here, although it was undisputed that McNabb's acts were sufficient, by themselves, to cause Caliyah's death, the State attempted to show that his violent acts were not an intervening cause of the victim's death because they were foreseeable, and thus, they did not break the chain of causation between Bell's decision to live with McNabb and Caliyah's death. In support of this theory, the State relied on evidence that McNabb had previously hit Bell and Lester. There was, however, no evidence presented that McNabb

15

had ever physically abused or threatened to physically abuse his children, and while evidence that McNabb had previously hit Bell and Lester may have made McNabb's violent act of crushing his daughter's skull possible, this evidence alone did not make the occurrence of such abuse reasonably foreseeable. That is not to say that knowledge of previous violence by another caregiver can never make violence against another person foreseeable, only that, under the unique facts of this case, the evidence presented to the jury was insufficient to meet the standard of reasonable probability. To hold otherwise would lead to the result that every parent who knows their child's other parent or caregiver had previously hit an adult could be exposed to potential felony criminal liability for the intervening criminal acts of the other person. In the absence of evidence showing that McNabb's violent conduct toward Caliyah was reasonably foreseeable to Bell, we cannot say that the evidence presented to the jury was sufficient to establish the required proximate cause between Bell's decision to live with McNabb and the specific injuries that resulted in Caliyah's death. See *Morris v.*

*Baxter*, 225 Ga. App. 186, 186-188 (483 SE2d 650) (1997) (affirming grant of summary judgment to defendant in wrongful death case because victim's death, which resulted from a self-inflicted gunshot, was not a foreseeable consequence of the defendant's act of leaving the rifle in his home where victim could access it, despite evidence that the defendant knew the victim was depressed, knew she suffered from diminished mental health, and knew the victim had indicated that she was "bored with life"). Compare *Brown v. State*, 297 Ga. 685, 687-688 (2) (777 SE2d 466) (2015) (Evidence of defendant's acts of depriving victim of sustenance was found to be a proximate cause of the victim's death where the evidence showed that the victim's starvation severely affected his ability to heal from the physical abuse he suffered at the hands of the defendant and another); *Bagby v. State*, 274 Ga. 222 (552 SE2d 807) (2001) (Evidence that the defendant left her boyfriend at home alone with the victim and the victim died shortly after defendant's return was sufficient to support defendant's conviction of contributing to the delinquency of a minor where the evidence showed that the

17

defendant and her boyfriend used methamphetamine before the defendant left home and the defendant knew that drug use "tended to exacerbate" her boyfriend's violent behavior, that her boyfriend had previously threatened to harm the victim, and that her boyfriend had previously hit and bitten the victim and beat the victim about the face one week before her death.); *Melancon v. State*, 368 Ga. App. 340, 344-345 (1) (890 SE2d 113) (2023) (Evidence of proximate cause in case involving the death of a child was found to be sufficient where the evidence showed the defendant, the father of the victim, knew the victim's mother was abusing her, he interfered to prevent the State's investigation into the mother's abuse of the victim, and the victim later died from an intentionally inflicted massive head trauma inflicted by her mother.).

The Court of Appeals cited three cases for its opposite conclusion, but these cases, in fact, highlight the lack of evidence establishing the causal connection between Bell's conduct and Caliyah's death. The first case, *Williams v. State*, 298 Ga. 208, involved a defendant who hid cocaine in a couch, within the reach of

18

a child who found the cocaine, ingested it, and died. In the second case, *B. L. M.*, 228 Ga. App. at 665 (1), the defendant abandoned a child, leaving the child exposed to the elements and causing the child's death. In both of these cases, there was no intervening cause of the victims' deaths. The third case, *Skaggs v. State*, 278 Ga. at 19-20 (1), is factually more similar to this one in that it involved an intervening cause that produced injury to the victim. The victim in *Skaggs* died after the defendant kicked him in the head with steel-toed boots, causing the victim to fall to the ground, where he hit his head on the concrete. We upheld Skaggs' conviction for felony murder predicated on the commission of an aggravated assault because, even though the immediate cause of the victim's death was the injuries he suffered in the fall, "the fall itself was the direct and immediate result of the blows administered by Skaggs" and "[t]he only intervening force was gravity." Id. at 20 (1). In each of these cases, the victims' deaths were caused by the defendants' acts and the consequence of death or injury was not just merely possible from the defendants' acts, but such consequence was probable. The risk

of the specific harm to Caliyah that resulted in her death as the result of McNabb's acts, was, in comparison, far less appreciable.

In summary, the evidence here showed that Bell went to sleep one night, checked on Caliyah early the next morning, and went back to sleep for four and one-half hours. The evidence further showed that while Bell slept, McNabb committed a violent crime that the State conceded was the direct and immediate cause of Caliyah's death. There was no evidence that Caliyah's death was a reasonably foreseeable consequence of Bell's drug use or drug use in the home by McNabb or others or that it was reasonably foreseeable that McNabb would commit the horrific crimes that resulted in Caliyah's death. And there was no evidence presented that showed Bell was a party to McNabb's crimes, that she heard McNabb striking Caliyah and did nothing to stop him, or that she refused to provide Caliyah with potentially life-saving medical treatment.[8] In

---

[8] In fact, the prosecutor told jurors during closing argument that "[i]f [Bell] had seen, if she had woken up and heard or seen McNabb beating on her child, I bet you she would have run in there and got into it and tried to fight off McNabb. I don't think she would ever just sit and watch that happen."

the absence of evidence from which a reasonable jury could infer that that Bell's conduct proximately caused Caliyah's death, compare *Williams,* 298 Ga. at 213, the evidence presented to the jury was simply insufficient as a matter of constitutional due process to support her conviction for felony contributing to the dependency of a minor. Accordingly, the decision of the Court of Appeals is reversed.

*Judgment reversed. All the Justices concur, except Pinson, J., disqualified.*