**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 12, 2026**

# In the Court of Appeals of Georgia

A25A1813. LUNDY et al. v. KEMP et al.

FULLER, Senior Judge.

After Eric Walker committed suicide while being held in jail, Cijii Lundy, as Walker's surviving spouse and the administrator of his estate, filed a wrongful death action.[1] The matter proceeded to a jury trial; the jury returned a verdict for the two remaining defendants, jail officers Joel Kemp and Gregory Phillips; and the trial court entered judgment in accordance with the jury's verdict and thereafter denied Lundy's motion for judgment notwithstanding the verdict and a new trial. Lundy appeals, contending that the trial court erred in: (1) permitting the defendants to present evidence and argue that they had discretion with regards to a particular jail policy and

---

[1] This is the second appearance of this matter before this Court. See *Lundy v. Hancock County*, 368 Ga. App. 772 (890 SE2d 92) (2023).

allowing the jury to answer a related special interrogatory; (2) excluding evidence of and argument as to additional acts of alleged negligence by the defendants; (3) admitting into evidence only a redacted jail policy, rather than a more complete version of the policy; (4) denying her motion for a directed verdict; (5) permitting the defendants to present evidence that Walker's suicide, rather than the defendants' negligence, was the proximate cause of his death and make an argument to that effect; and (6) excluding evidence as to the defendants' insurance coverage and denying her request to voir dire the jury as to the insurance carrier. We conclude that the trial court erred in permitting the defendants to present evidence and argue that a particular jail policy was discretionary and in allowing the jury to answer a related special interrogatory, and we therefore reverse the trial court's judgment and remand the case with direction. We also address additional claims of error to the extent that the issues could recur if the case is retried.

"On appeal following a jury trial, we view the evidence in the light most favorable to the jury's verdict." *Preferred Women's Healthcare LLC v. Sain*, 367 Ga. App. 821, 822 (888 SE2d 599) (2023). See *Meadows v. Beam*, 302 Ga. 494, 495(1) (807

2

SE2d 339) (2017) (viewing the evidence in an appeal from a jury verdict in the light most favorable to the prevailing party).

So viewed, the evidence shows that Kemp and Phillips were working the overnight shift as jailers at a detention center in Hancock County on the night of July 30, 2020. They were the only jailers "on the floor,"[2] and they were required to supervise 20 or more inmates. Walker was brought into custody. He was agitated and uncooperative, and he appeared to be under the influence of alcohol or some other substance. Walker was allowed to telephone his mother, and both Kemp and Phillips overheard him say something to the effect of, "You better get my death certificate ready. I'm going to die in here tonight." After the phone call, Walker was placed in a cell.

Kemp knew Walker and considered him a friend. Kemp also knew that Walker had previously threatened to harm himself in jail while intoxicated, but was fine the next day. Kemp talked to Walker that night in an attempt to get him to settle down. However, while Kemp was attending to other inmates, Walker was left alone for a period of time and intentionally struck his head against his cell door. Upon returning

---

[2] There was an additional person working in a central control facility, but she was not permitted to leave her post.

to Walker's cell, Kemp discovered that Walker had also ripped a sheet or towel and looped it around his neck. Kemp took several items from Walker's cell, but left Walker — who assured Kemp he would not hurt himself — with his t-shirt, boxers, and wave cap . A few minutes later, Phillips checked on Walker, who had ripped up his t-shirt, tied it to the bedpost, and looped it loosely around his neck. Phillips called Kemp back into Walker's cell, and once again, Walker told Kemp that he would not hurt himself. Walker seemed calm, and Kemp left Walker in his cell, wearing his boxers, socks, and wave cap. Approximately 20 minutes later, Phillips checked on Walker again. Phillips discovered that Walker had hanged himself from the bed using his wave cap, resulting in his death.

Lundy thereafter filed a wrongful death suit against Hancock County, the Hancock County Sheriff's Office (collectively, HCSO), and numerous individual defendants, including Kemp, Phillips, and several other officials with the sheriff's office and jail. The trial court granted HCSO's motion for judgment on the pleadings on the basis of sovereign immunity and granted summary judgment to the individual defendants, including Kemp and Phillips, based on official immunity. Lundy appealed, and this Court reversed the grant of summary judgment to Kemp and Phillips and

4

affirmed the other rulings. See *Lundy v. Hancock County*, 368 Ga. App. 772 (890 SE2d 92) (2023). As relevant here, this Court noted that subsection (E) of Policy 2.5 of the jail operations manual provided:

1. *Close Observation* is reserved for the detainee who is not actively suicidal, but expresses suicidal ideation and/or has a recent prior history of self-destructive behavior. This detainee should be observed by detention officers at staggered intervals not to exceed every 15 minutes.

2. *Constant Observation* is reserved for the detainee who is actively suicidal, either by threatening or engaging in the act of suicide. This detainee should be observed by a staff member on a continuous, uninterrupted basis.

3. Other supervision aids (e.g. closed circuit television, detainee companions/watchers, etc.) can be utilized as a supplement to, but never as a substitute for, the above observation levels.

Id. at 779(8)(a). This Court held that "these policies clearly establish ministerial duties for detention officers to observe a detainee who has expressed suicidal ideation at intervals not to exceed 15 minutes and to observe a detainee who is either threatening or engaging in an act of suicide on a continuous basis." Id. We further determined that there were genuine issues of material fact as to whether Kemp and

5

Phillips "negligently failed to perform the ministerial duties of observing Walker at least every 15 minutes," as required by jail policy. Id. at 780(8)(a).

On remand, Lundy filed a motion in limine to exclude any evidence or argument that Walker was contributorily or comparatively negligent or assumed the risk of injury, which the trial court denied. Kemp and Phillips (collectively, the defendants) filed a motion in limine to exclude, inter alia, any evidence or argument regarding any claims of negligence against them that — following this Court's prior opinion — they claimed did not survive summary judgment and to exclude any evidence or jury voir dire regarding insurance coverage. The trial court granted, in part, the defendants' motion in limine, excluding (1) any evidence or argument as to acts of negligence other than the defendants' failure "to perform the ministerial task of checking on the deceased every 15 minutes," and (2) any evidence or voir dire as to the defendants' insurance. The defendants also requested a special interrogatory on official immunity, which the trial court agreed would be given to the jury.

The matter proceeded to a jury trial, and the jury heard testimony from the defendants, as well as a forensic pathologist, who testified that Walker's blood alcohol concentration was almost twice the legal limit for driving and that he also had

methamphetamine in his system. Evidence was also admitted that pursuant to Policy 2.5(E)(1), inmates who have expressed suicidal ideation and/or have a recent prior history of self-destructive behavior "should be observed by detention officers at staggered intervals not to exceed every 15 minutes." The forensic pathologist, however, testified that Walker would have lost consciousness within fifteen to thirty seconds of applying pressure to his neck and would have died within three to five minutes. She further explained that if Walker had hanged himself within five minutes of the last time the jailers had checked on him, he would have been dead five minutes later, and a check fifteen minutes after the last check most likely could not have saved his life. The jury was also able to view surveillance video footage that showed the doorway to Walker's cell, which the defendants argued demonstrated that Walker hanged himself within five minutes of their last check on him.

During trial, the court decided that it was for the jury to determine whether the 15-minute check required by Policy 2.5(E)(1) applied and whether the defendants violated the policy. And, over Lundy's objection, the court ruled that the defendants could present evidence and argue that the policy was discretionary. Accordingly, a defense witness testified over Lundy's objection that the provision requiring 15-

minute checks was a "guideline" and that the officers had "flexibility" in applying it. The defendants similarly argued to the jury that they had discretion in complying with Policy 2.5(E)(1).

After the jury returned a verdict for the defendants, Lundy filed a motion for judgment notwithstanding the verdict and for a new trial, which the trial court denied. This appeal follows.

1. (a) Lundy contends the trial court erred in admitting evidence and permitting the defendants to argue that Policy 2.5(E)(1) was discretionary.[3] We agree.

As we explained in the prior appeal of this matter, individual government employees, such as Kemp and Phillips,

> are shielded by official immunity from damages suits unless the plaintiff can establish that the official negligently performed a ministerial act or performed a discretionary act with malice or an intent to injure. A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

---

[3] We have taken Lundy's claims of error out of order.

*Lundy*, 368 Ga. App. at 778(7) (citation modified). As set forth above, this Court determined that Policy 2.5(E) clearly established a ministerial duty "for detention officers to observe a detainee who has expressed suicidal ideation at intervals not to exceed 15 minutes and to observe a detainee who is either threatening or engaging in an act of suicide on a continuous basis." Id. at 779(8)(a). See generally *Grammens v. Dollar*, 287 Ga. 618, 620 (697 SE2d 775) (2010) ("Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises." (citation omitted)). See also *Howell v. Willis*, 317 Ga. App. 199, 201 (729 SE2d 643) (2012) (explaining that where the facts concerning the defendant's behavior "are not in dispute, the court determines whether those acts were discretionary or ministerial"). Nevertheless, as set forth above, the trial court permitted the defendants to present evidence and argue that they had flexibility in complying with Policy 2.5(E)(1), such that it was discretionary. Given this Court's prior ruling, the trial court erred.

A ruling by this Court on any issue is binding in all subsequent proceedings. OCGA § 9-11-60(h) ("The law of the case rule is abolished; . . . provided, however,

that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."). Accord *Hicks v. McGee*, 289 Ga. 573, 577(2) (713 SE2d 841) (2011). See also OCGA § 5-6-10 (providing that any decision by an appellate court and direction given "shall be respected and carried into full effect in good faith by the court below"). The only exception to Georgia's law-of-the-case rule is when the "evidentiary posture" of a case has changed between appeals, as when "a new issue that the appellate court has not addressed is raised by amended pleadings or otherwise," or when "the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented." *Choate Constr. Co. v. Auto-Owners Ins. Co.*, 335 Ga. App. 331, 336–37(1) (779 SE2d 465) (2015) (citation modified). Accord *McLean v. Cont'l Wingate Co., Inc.*, 222 Ga. App. 805, 807(1) (476 SE2d 83) (1996). See also *Maree v. Phillips*, 274 Ga. 369, 371(3) (552 SE2d 837) (2001) ("Under the 'law of the case rule,' [an appellate] decision is binding in all subsequent proceedings in the trial court and in our appellate courts, absent a change in the evidentiary posture of a case.").

The defendants argue that whether Policy 2.5(E) was discretionary was a question of fact for the jury. See generally *Grammens*, 287 Ga. at 620. But this Court already ruled that Policy 2.5(E) was ministerial, and the defendants do not argue that the evidentiary posture of the case has changed, either because a new issue was raised by amended pleadings or because the original evidence submitted was found to be insufficient and later supplemented. See *Choate Constr.*, 335 Ga. App. at 336–37(1). As a result, our prior ruling in *Lundy*, 368 Ga. App. at 779(8)(a) — that Policy 2.5(E) imposes a ministerial duty — is the law of the case. See *Choate Constr.*, 335 Ga. App. at 339(1).

The defendants claim that this Court's ruling in *Lundy* was erroneous and was improperly issued sua sponte, and therefore denied them due process. But they point to no such exceptions to the law-of-the-case rule, and we have found none. See generally *Hicks*, 289 Ga. at 578(2) ("Even where the law subsequently changes, appellate rulings remain binding as between parties to a case, so long as the evidentiary posture of the case remains unchanged, despite all contentions that prior rulings in the matter are erroneous." (quotation marks omitted)); *Widener v. Ashkouti*, 239 Ga. App. 530, 530(1) (521 SE2d 215) (1999) (explaining that in civil actions, the superior court

and this Court are bound by this Court's previous rulings "regardless of whether [the] defendants contend those rulings may be erroneous").[4]

Because our prior ruling — that Policy 2.5(E) was ministerial — is the law of the case, we hold that the trial court erred. While the jury was entitled to determine whether the defendants complied with Policy 2.5(E) and whether any failure to comply caused Walker's death, the jury was not entitled to consider evidence and argument that Policy 2.5(E) was discretionary. Accordingly, the judgment must be reversed, and Lundy is entitled to a new trial.

(b) In a related claim, Lundy contends the trial court erred in instructing the jury to determine, via special interrogatory, whether Policy 2.5(E)(1) imposed a discretionary guideline or a mandatory requirement. Once again, given the prior proceedings in this matter, we agree.

At trial, over Lundy's objection, the trial court propounded two special interrogatories to the jury. The first interrogatory asked, "Do you find that [Policy 2.5(E)(1)] applied to the situation [Kemp and Phillips] had to handle with detainee

---

[4] To the extent that the defendants were dissatisfied with this Court's ruling in *Lundy*, 368 Ga. App. 772, their remedy was to file a motion for reconsideration or to petition the Supreme Court of Georgia for a writ of certiorari. They did neither.

12

Eric Walker?" The jury was to select "Yes" or "No." The second interrogatory asked, "If you answered 'Yes' to the question above, do you find that the section providing 'This detainee should be observed by detention officers at staggered intervals not to exceed 15 minutes' was a discretionary guideline or a mandatory requirement?" and provided for the jury to choose one of the options. The jury answered the first question in the affirmative and selected "Discretionary guideline" for the second question.

As a general rule, "[a] trial court may submit questions of fact to the jury in the form of special verdicts if, in its discretion, it desires to seek a jury's aid to resolve specific factual disputes." *Outlaw v. Nasworthy*. 250 Ga. App. 362, 364(1) (551 SE2d 785) (2001) (quotation marks omitted). And a trial court is authorized to submit a special verdict form to the jury to decide factual issues necessary to determine whether a defendant is entitled to official immunity. Id. As such, the trial court was entitled to ask the jury the first special interrogatory. However, because under the law of the case, Policy 2.5(E) was ministerial, rather than discretionary, we conclude that the trial court erred in submitting the second question to the jury.

Lundy raises several additional claims of error. To the extent that these claims concern issues that may recur if the case is retried, we will address them.

2. Lundy contends that the trial court erred in excluding evidence of and argument regarding violations of other jail policies by the defendants. Specifically, Lundy argues that this Court, in reversing the grant of summary judgment to the defendants as to the violation of Policy 2.5(E), also reversed the trial court's grant of summary judgment to those defendants as to all other allegations of negligence. We agree and thus direct the trial court to reconsider its evidentiary ruling if the case is retried.

As set forth above, the individual defendants, including Kemp and Phillips, sought summary judgment on the basis that, inter alia, they were entitled to official immunity. In response, Lundy asserted that the individual defendants failed to comply with numerous jail policies and procedures, including Policy 2.5(E), and that official immunity did not bar her claims because the policies established ministerial duties. In granting summary judgment to all of the individual defendants, the trial court found, inter alia, that although Kemp and Phillips had ministerial duties to supervise Walker every 15 minutes, those duties were not triggered because the officers had been unable

14

to complete an intake screening on Walker and determine whether he was a suicide risk which, in any event, would be a discretionary act. On appeal to this Court for the first time, Lundy once again argued that the individual defendants were negligent in failing to comply with various jail policies, each of which established ministerial duties.

In our prior ruling, this Court reversed the grant of summary judgment to Kemp and Phillips and otherwise affirmed the trial court's grant of summary judgment as to the other individual defendants. *Lundy*, 368 Ga App. at 777–85(6)–(9). Notably, in our prior decision, this Court did not address any other specific allegations of negligence — aside from the allegations as to Policy 2.5(E) — against Kemp and Phillips. See id. Nevertheless, before trial, the defendants sought to exclude evidence of any negligent acts other than their failure to supervise Walker every 15 minutes. They asserted that any other claims of negligence had been excluded as a result of the trial court's grant of summary judgment to them as to those issues, and what they claimed was this Court's affirmance of that ruling. On remand, the trial court ruled that based upon its review of the briefing in this Court, as well as the record, "the only instance of negligence that survives for determination is that of the failure to perform the

ministerial task of checking on the deceased every 15 minutes" in accordance with Policy 2.5(E)(1).

As an initial matter, to the extent that Kemp and Phillips contend that this Court reversed *in part* the grant of summary judgment to them *only* as to the 15-minute provision and otherwise affirmed the grant of summary judgment to them, nothing in this Court's prior decision indicates that the reversal of summary judgment to them was in part. See *Lundy*, 368 Ga. App. at 773, 778–81(8). Rather, by reversing in full the grant of summary judgment to Kemp and Phillips, this Court restored the parties to the position they occupied before that judgment was entered. See *Franklyn Gesner Fine Paintings v. Ketcham*, 259 Ga. 3, 4(6)(a) (375 SE2d 848) (1989) ("The legal effect of the reversal of a judgment on appeal is to nullify the judgment below and place the parties in the same position in which they were before judgment." (quotation marks omitted)). Accord *J. Michael Vince, LLC v. SunTrust Bank*, 352 Ga. App. 791, 794(2)(a) (835 SE2d 809) (2019).

Moreover, although this Court held that there was a genuine issue of material fact as to whether the defendants had failed to comply with Policy 2.5(E), see *Lundy*,

16

368 Ga App. at 778–80(8)(a), it did not specifically consider any other allegations of negligence against Kemp and Phillips.[5] The law-of-the-case rule encompasses only our explicit holdings. See *Hicks*, 289 Ga. at 579(2) (explaining that a court errs by expanding the law-of-the-case rule to encompass implied rulings); *Morrison v. Morrison*, 299 Ga. App. 758, 760(1) (683 SE2d 696) (2009) (noting that the law-of-the-case rule "encompasses only . . . explicit holdings."); *Parks v. State Farm Gen. Ins. Co.*, 238 Ga. App. 814, 815(1) (520 SE2d 494) (1999) (holding that law-of-the-case rule "applies only to actual *decisions*, not to issues raised by the parties but never ruled upon").

Thus, if this case is tried again, this Court's prior decision provides no basis for the trial court to categorically exclude evidence as to other alleged acts of negligence by the defendants, including potential violations of policies other than Policy 2.5(E)(1). The trial court therefore should consider, in the first instance, whether any of those acts might be admissible.

[5] This Court rejected Lundy's claim that any of the *other* individual defendants could be liable for failing to provide adequate medical care to Walker because, this Court explained, the provision of medical care is a discretionary act. *Lundy*, 368 Ga App. at 782(9)(b). Similarly, this Court rejected Lundy's claim that any of the *other* individual defendants were personally liable for violating any other ministerial duties. Id. at 781–82(9)(a)–(b) .

3. Lundy also argues that the trial court erred in admitting into evidence only a redacted version of Policy 2.5(E).

Before trial, Lundy sought to admit into evidence the jail's entire suicide prevention policy, which consisted of all of Policy 2.5, while the defendants sought to admit only a redacted version, consisting of the title and the 15-minute check contained in Policy 2.5(E)(1). The trial court ultimately ruled — over Lundy's objection and in accordance with its pretrial ruling that the only issue of negligence that remained following this Court's prior opinion was whether the defendants complied with the 15-minute checks required by Policy 2.5(E)(1) — that only a redacted version of Policy 2.5(E) was admissible.[6] The redacted version of Policy 2.5 admitted at trial included only its preamble and section (E)(1), which provides that inmates who have expressed suicidal ideation and/or have a recent prior history of self-destructive behavior "should be observed by detention officers at staggered intervals not to exceed every 15 minutes."

---

[6] The defendants argue that Lundy failed to obtain a ruling from the trial court on this issue and failed to object to the redacted policy, but this claim is belied by the record, which indicates that the court issued a final ruling on this issue by e-mail and that Lundy objected to the redacted policy.

Lundy argues that the trial court erred in using the redacted policy because this Court quoted the entire Policy 2.5(E) in *Lundy* and held that "these *policies* clearly establish ministerial duties for detention officers to observe a detainee who has expressed suicidal ideation at intervals not to exceed 15 minutes and to observe a detainee who is either threatening or engaging in an act of suicide on a continuous basis." *Lundy*, 368 Ga. App. at 779(8)(a) (emphasis added). If the case is retried, we direct the trial court to reconsider the admission of jail policies in addition to Policy 2.5(E)(1) in light of our rulings in Divisions 1 and 2.

4. Lundy next argues that the trial court erred in denying her motion for a directed verdict. This argument is not compelling.

"A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." *Moore v. Singh*, 326 Ga. App. 805, 805 (755 SE2d 319) (2014) (quotation marks omitted).

To prevail on her claim of negligence against the defendants, Lundy has to establish "a duty, a breach of that duty, causation and damages." *City of Richmond Hill v. Maia*, 301 Ga. 257, 258(1) (800 SE2d 573) (2017) (quotation marks omitted). Even

assuming — as Lundy argues — that the defendants conceded that they had a duty to Walker pursuant to Policy 2.5(E)(1) and that they breached that duty, there was evidence from the forensic pathologist that even a timely check many not have prevented Walker's death. Because there was evidence that any breach by the defendants of Policy 2.5(E)(1) — the only issue the jury was asked to decide — did not cause Walker's death, the record does not demand a verdict for Lundy, and the trial court did not err in denying a directed verdict.

5. Lundy also asserts that the trial court erred in admitting evidence or argument that Walker's suicide, as opposed to the defendants' negligence, was "the proximate cause of his death." We disagree.

Of course, to recover for injuries caused by another's negligence, a plaintiff must prove that the defendant's negligence was both the "cause in fact" and the "proximate cause" of the injury. *City of Richmond Hill*, 301 Ga. at 258(1) (quotation marks omitted). And there "may be more than one proximate cause of an injury in cases involving the concurrent negligence of several actors." *Knight v. Roberts*, 316 Ga. App. 599, 608(1)(b) (730 SE2d 78) (2012) (citation modified). However,

the well-established doctrine of intervening causes states that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the defendant, which was not *foreseeable* by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury.

*City of Richmond Hill*, 301 Ga. at 259(1) (quotation marks omitted).

Generally speaking, "suicide is deemed an unforeseeable intervening cause of death which absolves the tortfeasor of liability." *City of Richmond Hill*, 301 Ga. at 259(1). But there are exceptions to this general rule, including the special-relationship exception. Id. at 260(1). Such a special relationship may exist between "a police officer or jailer and his detainee or prisoner . . . because a duty to protect arises under such circumstances." Id. at 261(1). Accord *Brantley v. Jones*, 363 Ga. App. 466, 477(3)(c)(i) (871 SE2d 87) (2022).

Lundy asserts that because of the special relationship between a jailer and an inmate, a jailer's failure to protect an inmate from self-harm must be considered the proximate cause of any resulting suicide. We do not agree. Under the general rule, a suicide is always an intervening cause that precludes liability. However, under the special-relationship exception, a jailer may be held liable for a suicide depending on

21

the facts and circumstances. See *Brantley*, 363 Ga. App. at 477(3)(c)(i) (holding that jury could find that inmate's death by suicide was caused by detention officer's failure to supervise inmate in accordance with mandated 15-minute watch). But our case law does not demand a finding of liability in every such instance. Rather, questions of proximate cause are generally left to the jury. *City of Richmond Hill*, 301 Ga. at 261(2). And they should be in this case as well, particularly given the evidence that even compliance with Policy 2.5(E)(1) may not have prevented Walker's death.

6. Finally, Lundy asserts that the trial court erred in excluding any evidence as to the defendants' liability insurance and in denying her request to qualify all prospective jurors as to the defendants' insurance carrier.

(a) Evidence of liability insurance is not admissible except under specific circumstances not present in this case. OCGA § 24-4-411 ("In all civil proceedings involving a claim for damages, evidence that a person was or was not insured against liability shall not be admissible except as provided in this Code section. This Code section shall not require the exclusion of evidence of insurance against liability in proceedings [regarding motor carrier certificates of insurance] or when such evidence is offered for a relevant purpose, including, but not limited to, proof of agency,

ownership, or control, and the court finds that the danger of unfair prejudice is substantially outweighed by the probative value of the evidence."). Accordingly, we conclude that the trial court did not err in excluding any evidence as to the defendants' liability insurance.

(b) As to the jury, "[i]t is the longstanding rule in Georgia that, to ensure the right of trial by an impartial jury, a party to a civil case is entitled to have the jury qualified by the court as to any insurance carrier with a financial interest in the case." *Ford Motor Co. v. Conley*, 294 Ga. 530, 550(3)(b) (757 SE2d 20) (2014). See generally OCGA § 15-12-135(a) ("All trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the third degree as computed according to the civil law."). It is an equally longstanding rule that "where a civil jury was not properly qualified in this way, and where the party seeking such qualification has properly preserved the issue for review, prejudice to that party will be presumed, and in the absence of proper rebuttal, a new trial must be ordered." *Ford Motor Co.*, 294 Ga. at 550(3)(b).

23

According to the defendants, they were covered under a policy issued by the Association County Commissioners of Georgia-Interlocal Risk Management Agency. The defendants argue that because an interlocal risk management agency "is not an insurance company or an insurer under" Georgia's Insurance Code, see OCGA § 36-85-4, and is not a commercial insurer, no voir dire was required. But the rule set forth in *Ford* requires voir dire as to any "insurance carrier" with a financial interest in the case. *Ford Motor Co.*, 294 Ga. at 550(3)(b). Here, the trial court did not allow any voir dire of the jury as to the interlocal risk management agency, but its reasons for doing so are not clear. If the case is retried, the trial court should determine, in the first instance, if the interlocal risk management agency at issue constitutes an "insurance carrier" with a financial interest in this case within the meaning of *Ford Motor Co.*, such that the jury must be qualified as to it.

*Judgment reversed and case remanded with direction. Dillard, P. J., and Mercier, J., concur.*